IN RE INTEREST OF JANET J., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE, V.
FLORANCE S., APPELLANT, AND CRAIG J.,
APPELLEE AND CROSS-APPELLANT.
666 N.W.2d 741

Filed July 15, 2003.    No. A-02-918.

44

Gary J. Krajewski, of Krajewski Law Office, for appellant.

George M. Zeilinger, Deputy Keith County Attorney, for appellee State of Nebraska.

J. Blake Edwards, of McGinley, O'Donnell, Reynolds & Edwards, P.C., L.L.O., for appellee Craig J.

Edward D. Steenburg, guardian ad litem.

HANNON and MOORE, Judges, and BUCKLEY, District Judge, Retired.

HANNON, Judge.

## INTRODUCTION

This is an appeal by Florance S. and Craig J., parents of Janet J., from a dispositional order by the juvenile court involving Janet. The adjudication of Janet as a child defined under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998), was previously affirmed by this court, and the case was returned to the juvenile court for disposition. See *In re Interest of Janet Ann J.*, No. A-01-090, 2001 WL 1221682 (Neb. App. Oct. 16, 2001) (not designated for permanent publication). In the dispositional order, the juvenile court approved a case plan which did not provide for reasonable efforts to reunify Janet with Florance because the court found that Florance had committed felony assault upon other of her children and because Neb. Rev. Stat. § 43-283.01 (Reissue 1998) provides that in such case, reasonable efforts to preserve and reunify the family are not required. Upon a de novo review, we find that Florance committed a felonious assault which resulted in serious bodily injury of at least one of her other children; that her condition is still such that she is a possible danger to Janet; and that under § 43-283.01(4)(b), a reasonable effort to reunify the family is not required. Accordingly, we affirm.

## BACKGROUND

Janet was born to Florance and Craig on August 5, 2000, and Janet was removed from Florance's custody shortly after her birth. She has been in foster care continuously since that time.

At the time of Janet's birth, both Florance and Craig were married, but not to each other. Although they have not wed, they plan to marry each other sometime in the future.

At the time of the dispositional hearing on July 17, 2002, Florance was 31 years of age. When Janet was born, she was immediately taken into custody upon the ground of Florance's previous abuse of her other children. In 1988 when Florance was 17 years of age, her daughter Sandy D. died under suspicious circumstances. Apparently, there were no criminal proceedings as a result of this incident. On September 16, 1989, Florance gave birth to daughter Sondra D., who died 22 days later. In 1992, a juvenile proceeding was had for alleged abuse of another child, Matthew P. Florance was prosecuted in 1992 for child abuse, a Class IV felony, of both Sondra and Matthew. Florance pled guilty in the district court for Perkins County, Nebraska, to the abuse of Sondra and no contest in the district court for Keith County, Nebraska, to the abuse of Matthew. For the abuse of Sondra, Florance was sentenced to probation for a term of 5 years, and for the abuse of Matthew, she was sentenced to prison for a term of 1 year 8 months to 5 years. The sentencing orders provided that she was to serve the prison sentence first and then the probation sentence. She completed both sentences without an adverse incident.

Florance has a ninth grade education. Florance married Rick P. on February 14, 1990, and the marriage lasted approximately 1½ years. Rick was the father of Sandy and Sondra. On February 19, 1992, Matthew was born to Florance and Rick. Florance voluntarily relinquished her parental rights to Matthew after the charges of child abuse were brought against her. After divorcing Rick, Florance married Phillip S. on September 21, 1996. Florance's daughter Brandi S. was born of that marriage on January 17, 1997. Brandi was immediately removed from Florance's custody on the same ground that Janet was removed in this case. Florance relinquished her parental rights to Brandi, and Brandi was adopted. Florance divorced Phillip shortly before the adjudication hearing in this case. At the time of that hearing, Florance had been living with Craig, the father of Janet, for more than 2 years.

Florance testified that Janet would be physically safe if she were returned to Florance. She further testified: "I have a stable

home. I'm not bouncing around I'm not moving around. I have a job that I've kept for years. Normally I wouldn't keep a job for no more than eight months." She also testified that she successfully underwent counseling and completed parenting classes, and her evidence in that respect is not directly contested. Her evidence would establish that since being released from prison, she has been employed, has established a home, and has acted as a good and stable member of society. This evidence is not directly contested and is corroborated by witnesses such as a caseworker for the Department of Health and Human Services (Department) and three coworkers. There is evidence that Florance has been around young children and helped care for them without adverse incidents. Her witnesses testified that they would allow Florance to care for their grandchildren. There is no evidence that Florance has not acted in accord with this evidence.

Craig was 33 years old at the time of the adjudication hearing. He was married at that time to another woman, but was preparing to go through divorce proceedings. He had worked for the same employer for almost 6 years. He had one prior conviction for driving under the influence, but otherwise had a clear criminal record. There is no evidence that he would not be a responsible parent. We do not regard evidence of his having been observed buying beer on four occasions as indicative of any inability to parent. The only thing that could justify depriving Craig of custody of Janet is that he clearly intends to live with Florance and raise Janet with her. He would thereby expose Janet to any dangers that might result from Florance's shortcomings.

There is a report to Florance's counsel dated June 21, 2002, from Thomas J. Gilligan, a licensed clinical psychologist, in which he reports on his psychological evaluation of Florance. In the accompanying letter, Gilligan refers to a telephone conference he had with Florance's counsel, and Gilligan indicates that he was informed of the situation Florance was in at the time and that he would like to be helpful to her. He enclosed an 8-page report of his evaluation of Florance. The report establishes that he was apprised of Florance's history from the Department, court records, and interviews with and testing of Florance. The bottom line of his report is that he wishes he could document a "clear and significant change" in Florance. However, he found

little evidence to support her assertion that she has changed substantially. He said, "I find more frequent and more significant similarities than differences in the data from her current testing with the basic characteristics [a] Dr. Skulsky described in his evaluation done on October 11, 1997." Gilligan stated that the parental education and counseling Florance had undergone addressed superficial issues and "have not addressed underlying and fundamental personality constructs."

Dr. Stephen Skulsky's report of his October 11, 1997, evaluation is also in evidence. The report shows that an evaluation of Florance and Phillip, her husband at the time, was obtained by the Department to evaluate their capacity to parent Brandi. Skulsky's report states that Florance evidences a moderately severe to very severe emotional disturbance in the form of a "Mixed Personality Disorder." This report is very long and covers Phillip and the relationship of Florance and Phillip as parents with Brandi. It details the emotional problems of both parents. A statement in the report that we find significant is as follows:

> [T]he weakness to possible abuse of Brandi in each parent is there to the degree that they cannot access their own deeper emotional feelings of hurt, depression, loss, anger, and needingness [sic] and still find ways to integrate these needs into their conscious life so that they can handle the needs rather than "act them out" in a quick emotionally upsetting responsiveness to their child.

Skulsky also opined, "Without this deep change[,] it is unlikely she could become an adequate parent." He recommended that Florance engage in intensive individual psychotherapy. He closed with the statement: "Until such time as further significant changes occur[,] it is not wise to place Brandi back with the couple."

Janet was adjudicated as a juvenile within the meaning of § 43-247(3)(a) on December 18, 2000. A "CASA Report" dated December 28, 2000, stated that Janet had forged a family bond with her foster parents. It further stated that Craig had not "complied with legal avenues to acknowledge paternity or pursued biological testing to verify paternity." The report contained a recommendation that Janet remain in foster care, that Florance not be allowed visitation, and that Craig not be allowed visitation until his paternity is legally verified.

A court report filed June 20, 2002, was admitted without objection. It contains a section entitled "History of previous service interventions." This history and Florance's testimony are the only evidence in the record which clearly establish what Florance did to her earlier-born children. It shows that Florance's child Sandy, born on July 4, 1988, was taken to the hospital at a later date with a spiral fracture of her right femur and died on September 17, 1988, and that on September 16, 1989, Florance gave birth to Sondra, who died 22 days later. It shows that Matthew was born on February 19, 1992, and was admitted to the hospital on March 6 with a spiral fracture of his right femur. At the time, a pathologist opined that Matthew's injury resulted from excessive force being applied to the leg with a twisting action and that the caretaker would have had to have inflicted the injury knowingly.

The testimony that Florance gave at the adjudication hearing was received into evidence. Part of that testimony throws some light upon what Florance did to her earlier-born children. She admitted that she placed the child Sondra, who was alive, in a box in the closet of her residence a couple of minutes after Sondra was born. Florance did so because her mother did not know Florance had been pregnant and because Florance was afraid of her mother. Her mother took Florance and Sondra to the hospital. Florance admitted that Sandy had a spiral facture of her leg at the time of her death. Florance also testified that she hurt Matthew by pulling down on his leg while trying to change his diaper. Later in her testimony, she admitted that she was responsible for the injuries to Sondra and Matthew.

The case plan included in the court report provides a permanency objective of reunification with Craig and a concurrent plan of adoption. The plan provides for Janet to remain in a foster home. The goals relating to Florance are for her to prepare a family history, including information about family members and pictures for Janet. For Craig, in addition to his participation in preparation of the family history, the plan provides for him "to provide a safe and stable home environment." The plan provides that Craig would complete psychological and drug and alcohol evaluations and follow the recommendations, complete a parenting assessment, not consume drugs or alcohol, and maintain full

employment. The plan provides tasks consistent with the goals. While we find the visitation section of the plan confusing, it appears to provide Craig visitation with Janet.

In its July 19, 2002, dispositional order, the court found that Florance has "committed felony assault upon other of her children" and that reasonable efforts to reunify Janet and Florance are excused pursuant to § 43-283.01(4)(b). The order approves and adopts the case plan and court report.

## ASSIGNMENTS OF ERROR

Florance alleges that the court erred in finding that reunification with Florance was not a proper goal in this case. Craig alleges that "[t]he Keith County Court erred in its dispositional hearing wherein it found that re-unification with [Florance] and [Craig] was not a proper goal in this case." Since the plan does not purport to find reunification with Craig is not a proper goal, we interpret this assignment as simply joining Florance in her assignment. Craig does not argue issues concerning provisions in the case plan that are applicable only to him.

## STANDARD OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. *In re Interest of Kiana T.*, 262 Neb. 60, 628 N.W.2d 242 (2001).

■ The interpretation of statutes presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

## ANALYSIS

Florance first argues that there is no evidence to sustain the adjudication. This issue was settled in a previous appeal and need not be reconsidered in this appeal.

■ The portions of § 43-283.01 which are possibly applicable to the issues in the appeal provide:

(4) Reasonable efforts to preserve and reunify the family are not required if a court of competent jurisdiction has determined that:

(a) The parent of the juvenile has subjected the juvenile to aggravated circumstances . . . ;

(b) The parent of the juvenile has . . . (iv) committed a felony assault which results in serious bodily injury to the juvenile or another minor child of the parent; or

(c) The parental rights of the parent to a sibling of the juvenile have been terminated involuntarily.

There is no evidence that Florance's parental rights to any of her children were terminated involuntarily or that subdivision (a) concerning aggravating circumstances of the juvenile subject to the proceedings is applicable. There is no evidence that Florance even had an opportunity to subject Janet to aggravated circumstances. Florance and Craig argue that the requirements of § 43-283.01(4)(a) and (c) were not supported by the evidence. However, the court did not make a finding that she committed felony child abuse, but, rather, cited § 43-283.01(4)(b).

■ The only provision of § 43-283.01(4) that could be the basis of the Department's decision not to use reasonable effort to preserve the family is subdivision (b)(iv), i.e., that a court of competent jurisdiction has found that Florance has "committed a felony assault which results in serious bodily injury to . . . another minor child" of Florance. Florance and Craig argue that the evidence does not support the trial court's finding that Florance committed "felony child abuse." Brief for appellant at 10. They further argue that there is no such crime in Nebraska. We agree. A finding of "felony child abuse" does not satisfy the requirements of § 43-283.01(4)(b)(iv) and, in addition, there is no such crime in Nebraska. There is a crime of child abuse that is a felony, Neb. Rev. Stat. § 28-707 (Cum. Supp. 2002), but the present version of that statute is not the same as in 1988 and 1992 when Florance committed the crimes against her children.

■ In both cases, Florance was found guilty of a Class IV felony by violation of § 28-707 (Reissue 1989). This statute was modified in 1993. See 1993 Neb. Laws, L.B. 430 (effective date September 9, 1993). Before 1993, § 28-707 provided that child abuse was placing a child in a situation that endangered his or

her life or health, cruelly confining or punishing a child, or depriving a child of necessary food, clothing, shelter, or care. If the crime was committed intentionally, it was a Class IV felony, and if it was done negligently, it was a Class I misdemeanor. The statute did not contain any provision about the abuse resulting in serious bodily injury. In view of the definition of child abuse in § 28-707, there is considerable doubt that a general finding of guilt would be a finding of assault because it is possible to commit the crime of child abuse by means other than assault, such as depriving a child of food. However, even if that hurdle were overcome, it is clear that serious bodily injury was not an element of the crime. Section 28-707 now makes child abuse resulting in serious bodily injury a Class III felony, and it is a Class IIIA felony if serious bodily injury does not result but the abuse was done knowingly and intentionally. Under the terms of the present statute, child abuse is still not limited to an assault. See § 28-707(1) (Cum. Supp. 2002).

We therefore conclude that a finding by the trial court that Florance committed felony child abuse is neither supported by the evidence nor adequate to satisfy the requirements of § 43-283.01(4)(b)(iv). This finding does not end our consideration, however, because under our standard of review, as stated above, this court has the duty to perform a de novo review and to interpret and apply the applicable statutes in the process of that review.

We see the question to be whether the preponderance of the evidence shows that a court of competent jurisdiction has found that Florance has committed a felony assault which resulted in serious bodily injury to another minor child of Florance. If such a finding is made, a plan need not contain a provision for reunification of Florance and Janet. If such a finding is not made, the case plan must provide for reasonable efforts toward reunification.

First, we must determine what is meant in § 43-283.01 by the phrase "a court of competent jurisdiction has determined." Is the court of competent jurisdiction the court which has jurisdiction to determine the crime of felony assault or that which has jurisdiction over juvenile proceedings? In Nebraska, the district court has jurisdiction over felony matters. Neb. Const. art. V, § 9. The juvenile court has jurisdiction over juvenile proceedings and,

particularly, to approve or disapprove case plans for juveniles. § 43-247; Neb. Rev. Stat. § 24-517 (Cum. Supp. 2002). If the district court of Nebraska is the court of competent jurisdiction referred to, the determination of whether the parent committed a felony assault could be made only as part of a criminal prosecution where the elements of the crime charged were a felony assault which resulted in serious bodily injury. Such a legislative intent seems doubtful.

The phrase "a court of competent jurisdiction has determined," contained in § 43-283.01(4), was taken verbatim from 42 U.S.C. § 671(a)(15)(D) (2000). That federal statute more or less required the states to adopt a group of statutes on juvenile matters. The phrase contained in § 43-283.01 that the parent "committed a felony assault which results in serious bodily injury to the juvenile or another minor child of the parent" was taken almost verbatim from that federal statute. Section 43-283.01 was a part of 1998 Neb. Laws, L.B. 1041, and in reviewing that law, the Nebraska Supreme Court said:

> Construing this statutory framework in pari materia, we determine that the issue of reasonable efforts if required under § 43-283.01 must be reviewed by the juvenile court (1) when removing from the home a juvenile adjudged to be under subsections (3) or (4) of § 43-247 pursuant to [Neb. Rev. Stat.] § 43-284 [(Reissue 1998)], (2) when the court continues a juvenile's out-of-home placement pending adjudication pursuant to [Neb. Rev. Stat.] § 43-254 [(Reissue 1998)], (3) when the court reviews a juvenile's status and permanency planning pursuant to [Neb. Rev. Stat.] § 43-1315 [(Reissue 1998)], and (4) when termination of parental rights to a juvenile is sought by the State under [Neb. Rev. Stat.] § 43-292(6) [(Reissue 1998)].

*In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 54, 638 N.W.2d 510, 519 (2002).

The Supreme Court noted that the purpose of L.B. 1041 and the federal mandate which precipitated it was to change the emphasis from reunification of the family to that of the health and safety of the child. *In re Interest of DeWayne G. & Devon G., supra.* We conclude that the phrase "court of competent jurisdiction," contained in § 43-283.01(4), was a generic description used

in a federal law which was intended to impose the requirement on all 50 states. A state not making the required changes would lose considerable federal aid. See 42 U.S.C. § 671(a). In a federal statute that is intended to be followed by all states, it is impossible to name the court of the state that would litigate the necessary issues. It would clearly be necessary to use terms which would apply to whatever court system each of the several states might use. In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *In re Estate of Peterson*, 254 Neb. 334, 576 N.W.2d 767 (1998). In Nebraska, the court that decides the matter referred to in the cited federal statute is the juvenile court. See § 43-247. We therefore conclude that the juvenile court is the court of competent jurisdiction referred to in § 43-283.01(4)(b). Of course, this court is one of the courts of competent jurisdiction to decide issues that are part of a de novo review of juvenile cases.

The next question is what is meant by the phrase "committed a felony assault which results in serious bodily injury to . . . another minor child of the parent" contained in § 43-283.01(4). Again, this phrase was part of a federal statute intended to be enacted by all states. Interestingly, in the subsections of 42 U.S.C. § 671(a)(15)(D) that deal with aggravating circumstances, murder, and manslaughter (which are part of § 43-283.01(4)), the phrasing makes it clear that Congress expected the state legislators to insert into the applicable state statutes the state crimes that would meet the federal requirement instead of simply copying that portion of 42 U.S.C. § 671(a)(15)(D). In the parts of § 43-283.01 dealing with the aggravating circumstances, murder, and manslaughter, modifications were clearly made in L.B. 1041 so that it complied with, but did not copy, the provisions in the controlling federal statute. Section 43-283.01(4)(b)(iv), however, is simply a copy of the federal statute, and the generic crime of "felony assault" was therefore copied into this statute.

The phrase "a court of competent jurisdiction has determined," contained in § 43-283.01(4), does not require a conviction of the felony assault which results in serious bodily injury to another child of the parent, but only a determination that the crime was committed. Does it, however, require that the

juvenile court determine that the parent committed such an offense? Of course, before the juvenile court or this court can make such a determination, the preponderance of the evidence must show that the parent committed such an offense. The evidence would therefore have to show that the parent committed an assault on the child, such assault being a felony under the law of the State of Nebraska and resulting in serious bodily injury to that child.

Since 1977, Nebraska has had a statute which provides: "A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person." Neb. Rev. Stat. § 28-308 (Reissue 1995). Serious bodily injury is defined in Neb. Rev. Stat. § 28-109(20) (Reissue 1995) as "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." Section 28-308 is the only Nebraska statute we can find which satisfies the requirements of § 43-283.01(4)(b). Our question is therefore whether the preponderance of the evidence shows that Florance committed such an assault on one or more of her children.

The provision of § 28-707 (Reissue 1989), the child abuse statute under which Florance was convicted, did not require an assault or serious bodily injury. Therefore, any determination made by the district court in the prosecution of Florance for child abuse could not satisfy the requirements of § 43-283.01(4)(b). However, some admissions made in those proceedings might be useful evidence on the issue in this proceeding. In Florance's testimony at the adjudication hearing, which testimony was introduced at the dispositional hearing, Florance admitted to being the cause of the spiral fractures of both Sondra and Matthew. The record contains evidence by two doctors that Matthew's spiral fracture was the result of excessive force that had to have been inflicted knowingly by his caretaker. Florance admitted she caused that fracture, although she was not asked if she did so knowingly. There is an uncontested opinion by a doctor that the fracture was caused knowingly by the child's caretaker. There is medical evidence that other children under her care suffered similar injuries. First degree assault under § 28-308 is a general

intent crime, and the reckless intent therefore relates to the assault and not to the results achieved. See *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). From this evidence, we conclude that Florance caused the injury to Matthew knowingly and intentionally.

We are convinced that the evidence preponderates in favor of a finding that Florance committed an assault upon Matthew. However, the evidence must also show that the felony assault resulted in serious bodily injury. The evidence clearly shows the assault resulted in a broken leg. We are unable to find any direct medical testimony that a broken leg is a serious bodily injury or that it satisfied any particular one of the phrases contained in the definition of serious bodily injury in § 28-109(20). Part of the definition in § 28-109(20) is that the injury "involves a substantial risk of . . . disfigurement, or protracted loss or impairment of the function of any part or organ of the body." In *State v. Thomas*, 210 Neb. 298, 314 N.W.2d 15 (1981), it was held in a prosecution under § 28-308 that a trier of fact could use common knowledge to determine if the victim had suffered serious bodily injury. With respect to Matthew in the instant case, two medical experts concluded that "such a spiral fracture occurred as a result of excessive force being applied on the leg with a twisting action and that because of the significant force necessary to inflict such a spiral fracture[,] the caretaker of the child would have had to inflict such an injury knowingly." We do not hesitate to find as a matter of common knowledge that such a spiral fracture of a baby's leg involves a substantial risk of disfigurement or protracted loss or impairment of the function of that leg and is therefore a serious bodily injury. We therefore conclude as part of our de novo review that Florance committed a felony assault that resulted in serious bodily injury to another of her children.

We realize there is evidence that Florance was guilty of child abuse of two other children and that these children died a short time after such abuse. However, the record might not contain sufficient evidence to support a finding that Florance committed a felony assault on them which resulted in serious bodily injury to them. Since the terms of § 43-283.01(4)(b) can be satisfied by only one such assault, we do not summarize the evidence on the

other crimes to determine whether it is sufficient or insufficient. This does not mean the evidence of the other incidences of child abuse is not available, and we can and do use it in our determination of whether the case plan should contain a provision allowing for possible reunification of Florance with Janet.

In its order, the trial court did not indicate that it gave any consideration of whether reunification should be sought notwithstanding its application of § 43-283.01(4)(b) to find that reasonable efforts to reunify are excused. In Florance's brief, she argues that she presented evidence that she has reformed and that the State presented no evidence to dispute hers. Section 43-283.01(4) does not provide that efforts at reunification should not be made if the provisions of that subdivision are applicable, but, rather, that such efforts are not required. Section 43-283.01(1) provides that "[i]n determining whether reasonable efforts have been made to preserve and reunify the family and in making such reasonable efforts, the juvenile's health and safety are the paramount concern." That statute goes on to specify that such reasonable efforts are not required as summarized above.

In the floor debate of 1998 Neb. Laws, L.B. 1041, State Senator Gerald E. Matzke, the principal introducer of the bill, stated in answer to a question:

> [T]his bill maintains the present law that the first priority is that reasonable effort must be made to reunify the family using the new criteria of health and safety of the child. There is a separate provision that says that under certain, very aggravated circumstances, the court may determine that reasonable effort is no longer necessary.

Floor Debate, 93d Leg., 1st Sess. 11557 (Feb. 12, 1998). In being questioned about the provisions of § 43-283.01(4) and similar wording in the termination statute, Neb. Rev. Stat. § 43-292(10) (Reissue 1998), State Senator Matzke told the legislators that § 43-283.01 had to be enacted to satisfy federal requirements and then said:

> The protection we have is that all of this goes to the court, and . . . you're going to have a court look at the facts of the situation to determine whether . . . there should be a termination or not, and if it is completely out of whack or

unsupported by the evidence, certainly the court is not going to go along . . . .

Floor Debate, 93d Leg., 1st Sess. 11577 (Feb. 12, 1998).

■ We think the words of § 43-283.01 and the legislative history clearly demonstrate that the juvenile court must consider and determine whether the best interests of the child require reasonable efforts at reunification notwithstanding a finding of one of the situations in subdivision (4) and that in such consideration, the health and safety of the child must be paramount.

As part of our de novo review, we shall consider that question. We readily admit to being impressed with Florance's conduct since she was released from prison. Judges and other persons who regularly encounter persons who have committed serious offenses are often impressed with a person who has reformed and stayed reformed for a long period of time. The record shows that Florance has done so, and she therefore has our respect, notwithstanding the serious crimes she committed more than 10 years ago. The three acts of child abuse that she committed occurred over a period of 4 years. However, the record contains the undisputed evidence of two qualified psychologists who have thoroughly examined her. The bottom line of these psychologists' evidence is that Florance abused her young children as the result of a serious mental illness. The last psychologist to examine her in 2002 opined that her mental condition had not changed. This psychological evidence is not disputed by any qualified professional in the field. With such evidence, we find that the requirement that the court make the juvenile's health and safety its paramount concern leads to the conclusion that the evidence shows reasonable efforts to preserve and reunify Florance with Janet are unnecessary and that the trial court was correct in adopting the proposed case plan. We therefore affirm.

AFFIRMED.