COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, AtLee and Senior Judge Clements

**PUBLISHED**

JASON WILLIAM KING, SR.

                                                            OPINION BY
v.        Record No. 0164-18-2                    JUDGE WILLIAM G. PETTY
                                                            AUGUST 21, 2018
KING GEORGE DEPARTMENT OF
 SOCIAL SERVICES


FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
Herbert M. Hewitt, Judge

(Edith M. Min; Edith M. Min, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Nicholas A. Pappas; Kristie L. Kane, Guardian *ad litem* for the
minor children; Kristie L. Kane, PLC, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


       Jason William King, Sr. appeals the orders terminating his parental rights to his children.

King argues that the circuit court erred by sustaining a motion by the King George Department of

Social Services (the Department) for summary judgment and terminating his parental rights

pursuant to Code § 16.1-283(E)(iii), based on his prior conviction for involuntary manslaughter.[1]

Upon reviewing the record and briefs of the parties, we conclude that the circuit court did not err.

Accordingly, we affirm the decision of the circuit court.

                                    BACKGROUND

       "On review of a trial court's decision to terminate parental rights we view the evidence in

the light most favorable to the prevailing party, in this case, the Department, and grant to it all

_____

       [1] The Department argues that King did not preserve his argument for appeal because he
endorsed the final order as "Seen and objected to." However, we find that King preserved his
arguments for appeal in his response to the Department's motion for summary judgment and
closing argument. See Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (*en banc*).

reasonable inferences fairly deducible from the evidence." Farrell v. Warren County Dep't of Soc. Servs., 59 Va. App. 375, 420-21, 719 S.E.2d 329, 351 (2012).

King and Sonya Brown King (mother) are the biological parents of six children, five of whom are the subject of this appeal. In 2011, King was home with four of his children, who ranged in age from eight months (the infant) to four years old. Three of the children were outside playing. The infant needed her diaper changed, so King, who had a "weak stomach," placed the infant in the bathtub to clean her bottom. The phone rang, and King left the infant in the bathtub with enough water "to splash" while he answered the phone. While he was on the phone, the three-year-old child came into the house and turned the water on in the bathtub where the infant was sitting. King did not hear the child turn on the water, and when he returned to the bathroom, the infant was floating in about a foot of water. He tried to revive the infant, but she was dead. As a result of the incident, the Department became involved. King was subsequently convicted of involuntary manslaughter of the infant pursuant to Code § 18.2-32.

As a result of continuing problems, the Department remained active in monitoring the children throughout the subsequent years and eventually removed the children and filed for termination of King's and mother's parental rights pursuant to Code § 16.1-283. In February 2017, the juvenile and domestic relations district (JDR) court terminated King's parental rights to his children pursuant to Code § 16.1-283(C)(2). King appealed to the circuit court.[2]

On July 31 and October 10, 2017, the parties appeared before the circuit court. At the conclusion of the evidence, King made a motion to strike, which the circuit court denied. The Department made a motion for summary judgment. The circuit court directed the parties to submit

---

[2] Mother also appealed to the circuit court, and then to this Court, the court's termination of her parental rights pursuant to Code § 16.1-283(C)(2). This Court affirmed. See S. King v. King George Dep't of Soc. Servs., No. 0179-18-2, 2018 Va. App. LEXIS 220 (Va. Ct. App. Aug. 14, 2018).

the motion for summary judgment and response, as well as their closing arguments, in writing. After the documents were filed, the circuit court issued its letter opinion and sustained the Department's motion for summary judgment. On January 9, 2018, the circuit court entered orders terminating King's parental rights to his children pursuant to Code § 16.1-283(E)(iii). This appeal followed.

ANALYSIS

"When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). Generally, "trial courts are vested with broad discretion" in matters of a child's welfare, and its "determination of matters within its discretion is reversible on appeal only for an abuse of that discretion." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). "A trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Id. Statutory interpretation, however, presents a pure question of law and is subject to *de novo* review by this Court. Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003). When interpreting statutes, courts "ascertain and give effect to the intention of the legislature." Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003). "Statutes dealing with the same subject matter must be read together so as to adhere to the legislative intent underlying them and to permit them to operate together without conflict." McKinney v. Virginia Surgical Assocs., P.C., 284 Va. 455, 460, 732 S.E.2d 27, 29 (2012).

King argues that the circuit court erred in terminating his parental rights pursuant to Code § 16.1-283(E), which states that a parent's parental rights may be terminated

> if the court finds, based upon clear and convincing evidence, that it
> is in the best interests of the child and that . . . (iii) the parent has
> been convicted of an offense under the laws of the Commonwealth
> . . . that constitutes felony assault resulting in serious bodily injury

or felony bodily wounding resulting in serious bodily injury or felony sexual assault, if the victim of the offense was a child of the parent . . . at the time of such offense.

Code § 16.1-283(E) defines "serious bodily injury" as "bodily injury that involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty."

King asserts that his conviction for involuntary manslaughter was not a "felony assault resulting in serious bodily injury," as required under Code § 16.1-283(E)(iii). This Court addressed a similar argument in Brown v. Spotsylvania Dep't of Social Services, 43 Va. App. 205, 597 S.E.2d 214 (2004). In Brown, we concluded that the Department was not required to make reasonable efforts to reunite Brown with his child after he was convicted of child abuse and neglect in violation of Code § 40.1-103. Id. at 216, 597 S.E.2d at 220; see also Code § 16.1-281(B)(3). This Court held that "child abuse and neglect, as defined by Code § 40.1-103, and the result it caused [in that case, multiple injuries, including a fractured skull] sufficed to meet the definition of the term 'felony assault' in Code § 16.1-281(B)(3)." Brown, 43 Va. App. at 217, 597 S.E.2d at 220. In so holding, we defined "felony assault" from Code § 16.1-281(B)(3) as "any felonious crime that results in serious bodily injury to a child of the parent or a child who lives with the parent."[3] Id. at 213, 597 S.E.2d at 218. We held that "the provision's focus on crimes that result in serious bodily injury indicates . . . that the legislature is not as concerned with the nomenclature or the elements of the crime itself, but rather with the effect the crime had on the child-victim." Id. at 215, 597 S.E.2d at 219. Furthermore, we note that although the current case concerns Code § 16.1-283 (termination of

---

[3] This Court extended this definition of "felony assault" to Code § 16.1-283(E)(iii), the relevant statute here, in Kilby v. Culpeper County Dep't of Social Services, 55 Va. App. 106, 112, 684 S.E.2d 219, 222 (2009). We held in Kilby that "Code §§ 16.1-281(B)(3) and 16.1-283(E)(iii) are part of the same statutory scheme, and were adopted to protect the physical well-being of children." Id. at 113, 684 S.E.2d at 222.

parental rights) and not Code § 16.1-281 (which concerns foster care plans and was the code section at issue in Brown), the relevant language regarding conviction of an assault resulting in serious bodily injury is identical.[4]  As we stated in Brown, "felony assault" is not limited to common law assaults; the legislature's concern in adopting Code § 16.1-283 was the physical health of the child.

Accordingly, because King's conviction for involuntary manslaughter was a conviction for a "felonious crime that results in serious bodily injury to a child," we conclude that the conviction constitutes a "felony assault resulting in serious bodily injury."  Code § 16.1-283(E)(iii).[5]

Nevertheless, King argues that Brown does not control this case because involuntary manslaughter requires a different *mens rea* than the crime of child abuse and neglect addressed in

_____

[4] Code § 16.1-281(B) provides,

> The local board or other child welfare agency having custody of the child shall not be required by the court to make reasonable efforts to reunite the child with a parent if the court finds that . . . (3) the parent has been convicted of an offense under the laws of the Commonwealth or a substantially similar law of any other state, the United States or any foreign jurisdiction that constitutes felony assault resulting in serious bodily injury or felony bodily wounding resulting in serious bodily injury or felony sexual assault, if the victim of the offense was a child of the parent or a child with whom the parent resided at the time of such offense.
>
> . . . .
>
> "Serious bodily injury" means bodily injury that involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty.

[5] To the extent that King suggests that Brown was incorrectly decided, we note that this Court abides by the doctrine of interpanel accord.  A holding by one panel of the Court of Appeals of Virginia "bind[s] all other three-judge panels under the interpanel accord doctrine." Startin v. Commonwealth, 56 Va. App. 26, 39 n.3, 690 S.E.2d 310, 316 n.3 (2010) (*en banc*).  A decision of one panel protected by the interpanel accord doctrine "cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court." Congdon v. Congdon, 40 Va. App. 255, 265, 578 S.E.2d 833, 838 (2003).  The decision of the panel in Brown has not been overruled by this Court sitting *en banc* or by the Supreme Court.  Therefore, we are bound by its interpretation of Code § 16.1-281(B)(3).

Brown. We disagree. To obtain a conviction for involuntary manslaughter pursuant to Code § 18.2-32, the Commonwealth must show (1) the accidental killing of a person, contrary to the intention of the parties; and (2) the death occurs in the defendant's prosecution of an unlawful but not felonious act, or in the defendant's improper performance of a lawful act." Gregg v. Commonwealth, 67 Va. App. 375, 385, 796 S.E.2d 447, 452 (2017) (quoting Noakes v. Commonwealth, 54 Va. App. 577, 585, 681 S.E.2d 48, 52 (2009)). Notably, "[t]o constitute involuntary manslaughter, the 'improper' performance of a lawful act must amount to an unlawful commission of that lawful act, manifesting *criminal negligence*." Id. (emphasis added) (quoting Noakes, 54 Va. App. at 585, 681 S.E.2d at 52).

Criminal negligence is also required in order to obtain a conviction for child abuse and neglect pursuant to Code § 40.1-103. Mosby v. Commonwealth, 23 Va. App. 53, 59, 473 S.E.2d 732, 735 (1996). Code § 40.1-103 provides, in part, "It shall be unlawful for any person employing or having the custody of any child willfully or negligently to cause or permit the life of such child to be endangered or the health of such child to be injured . . . ." Criminal negligence must be "more than the lack of ordinary care and precaution[,] . . . something more than mere inadvertence or misadventure. The negligence must be so gross and culpable as to indicate a callous disregard of human life and of the probable consequences of [the] act." Ellis v. Commonwealth, 29 Va. App. 548, 556-57, 513 S.E.2d 453, 457 (1999) (internal quotation marks and citations omitted).[6] Therefore, not only can commission of either involuntary manslaughter or

---

[6] To the extent that Code § 40.1-103 requires a showing of willfulness, that requirement incorporates willful negligence. See Ellis, 29 Va. App. at 557, 513 S.E.2d at 458 ("While willful misconduct requires an intentional or purposeful act or failure to act, gross or criminal negligence involves a failure to act under circumstances that indicate a passive and indifferent attitude toward the welfare of others. Moreover, the defendant must be proved indifferent in the face of knowledge that injury or illegality will be the probable result or, in the alternative, that circumstances exist under which the defendant may be chargeable with such knowledge." (citation omitted)).

child abuse and neglect result in serious bodily injury to the child victim, but also the requisite *mens rea* is the same for both crimes.

Alternatively, King argues that involuntary manslaughter is not a predicate offense for termination pursuant to Code § 16.1-283 because it is not specifically listed in Code § 16.1-283(E)(ii). Code § 16.1 283(E)(ii) states, in pertinent part, that a parent's parental rights may be terminated when "the parent has been convicted of an offense . . . that constitutes murder or voluntary manslaughter . . . if the victim of the offense was a child of the parent." Code § 16.1-283(E)(iii) itself, however, subsumes into Code § 16.1-283(E) all the crimes that fit the definition of a "felony assault resulting in serious bodily injury or felony bodily wounding resulting in serious bodily injury or felony sexual assault" that are not already listed in Code § 16.1-283(E)(ii). As this Court noted in Brown,

> Code § 16.1-281(B) was enacted in response to 42 U.S.C. § 671, a legislative effort by the federal government to bring uniformity to the states' foster care and adoption assistance programs in exchange for federal aid. See 42 U.S.C. § 670 *et seq.* Code § 16.1-281(B) closely mirrors 42 U.S.C. § 671(a)(15)(D) . . . . Neither the federal statute nor Virginia's statute expressly defines the term "felony assault." The federal statute makes clear in other subsections, however, "that Congress expected the state legislators to insert into the applicable state statutes the state crimes that would meet the federal requirement instead of simply copying that portion of 42 U.S.C. § 671(a)(15)(D)." State v. Florance S., 666 N.W.2d 741, 750-52 (Neb. App. 2003), overruled on other grounds by State v. Selina N., 669 N.W.2d 429, 435 (Neb. 2003); see also 42 U.S.C. § 671(a)(15)(D)(i) ("the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse)").

Brown, 43 Va. App. at 213-14, 597 S.E.2d at 218. In fact, as we noted above, Brown was convicted of child abuse and neglect, a crime also not listed in Code §§ 16.1-281 or -283. Accordingly, we conclude that involuntary manslaughter is a felony assault for purposes of Code § 16.1-283(E)(ii).

Finally, King asserts that his parental rights should not be terminated based on his conviction for involuntary manslaughter because the conviction was six years prior to the removal of the children. Code § 16.1-283(E), however, does not impose any time restraints as to when the convictions had to occur in connection with the removal of the children.

Therefore, the circuit court did not err in terminating King's parental rights pursuant to Code § 16.1-283(E)(iii).[7]

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.

---

[7] King also argues that the trial court erred because King made efforts that substantially remedied the conditions which brought the children into foster care. However, the only basis on which the trial court terminated his parental rights was pursuant to Code § 16.1-283(E)(iii) as a result of his conviction for involuntary manslaughter. Therefore, we decline to consider this additional argument.