COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Russell, AtLee and Senior Judge Haley

CHRISTY LEE PAYNE

                                              MEMORANDUM OPINION*

v.      Record No. 0839-20-2                         PER CURIAM
                                                JANUARY 26, 2021

PRINCE EDWARD COUNTY
  DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Donald C. Blessing, Judge

(Ashley Ailsworth Sterling; Sterling Legal, PLLC, on brief), for
appellant.

(Kemper M. Beasley, III; M. Brooke Teefey, Guardian *ad litem* for
the minor children; Teefy Law, P.C., on brief), for appellee.


      Christy Lee Payne (mother) appeals dispositional orders approving the removal and initial

foster care plans relating to her two children, F.L.L. and G.L.L. Mother argues that the circuit court

erred in finding that the children were abused or neglected because the evidence was insufficient to

support a finding of abuse or neglect, nor was abuse or neglect proven by a preponderance of the

evidence. Upon reviewing the record and briefs of the parties, we conclude that this appeal is

without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

---

     * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

On appeal, "we view the evidence in the light most favorable to the prevailing party, in this case, the Department, and grant to it all reasonable inferences fairly deducible from the evidence." King v. King George Dep't of Soc. Servs., 69 Va. App. 206, 210 (2018) (quoting C. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 420-21 (2012)).

In January 2020, mother became a resident at Madeline's House shelter with her fifteen-month-old twins when her vehicle got a flat tire. On February 10, 2020, Prince Edward County Department of Social Services (the Department) received a report that the children were found unsupervised eating feces in the bathroom; the report further indicated that while the children slept, mother pinched their airways to wake them. The children were approximately sixteen months old at the time, and the family still resided at Madeline's House. The caller was also concerned about mother's history of homelessness, refusal of services offered to her, and mental stability.

On February 11, 2020, the Department removed F.L.L. and G.L.L. from mother's care. The Department contacted the police for assistance in the removal. When deputies arrived, they waited in an office adjacent to the room where mother, the children, and some social workers were located. At some point, mother was allowed to take the children to the bathroom to change their diapers. Mother remained in the bathroom for over twenty minutes, had locked the door, and refused to come out of the restroom. Eventually, deputies unlocked the bathroom and the

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

Department staff removed the children. Deputies detained mother, who was irate—kicking, screaming, and yelling—and transported her to Crossroads for evaluation.

The Department filed petitions for emergency removal of the children. On February 12, 2020, the Prince Edward County Juvenile and Domestic Relations District Court (the JDR court) entered preliminary removal orders and granted the Department temporary custody of both children. The JDR court denied visitation between mother and the children.

On March 4, 2020, the JDR court adjudicated that the children were abused or neglected and scheduled a dispositional hearing. The JDR court subsequently entered a dispositional order; it granted custody to the Department and approved the initial foster care plans for both children. The JDR court awarded mother visitation with the children at the discretion of the Department. Mother appealed the JDR court's rulings to the circuit court.

On June 25, 2020, the parties appeared before the circuit court. After hearing evidence and argument, the circuit court adjudicated that the children were abused and neglected and entered dispositional orders. Assistance and services had been offered to mother, but she did not avail herself to any assistance either before or after her children were removed. The circuit court found that mother did not properly supervise the children, had not availed herself of services, and had left the Commonwealth while her children remained in the Department's custody. The circuit court transferred custody of the children to the Department and held that visitation between mother and the children would be at the discretion of the Department. The circuit court further ordered that the Department continue to make reasonable efforts in making appropriate service referrals to mother and the children to accomplish the goals set forth in the foster care plans and ordered that mother should continue to utilize her best efforts to fulfill the requirements of the foster care plans. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in finding that the evidence was sufficient to prove that F.L.L. and G.L.L. were abused or neglected. Mother also argues that the abuse and neglect were not proven by a preponderance of the evidence.

Code § 16.1-228(1) defines an abused or neglected child as any child: "[w]hose parents . . . creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions." "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." D. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 342, 364 (2012) (quoting Jenkins, 12 Va. App. at 1183). "[T]he Code contemplates intervention . . . where 'the child would be subjected to an imminent threat to life or health to the extent that severe or irreversible injury would be likely to result if the child were returned to or left in the custody of his parent . . . .'" Id. Proof by a preponderance of the evidence is the appropriate standard for abuse and neglect cases. See Cumbo v. Dickenson Cnty. Dep't of Soc. Servs., 62 Va. App. 124, 130 (2013).

The record establishes that the Department became involved with the family in February 2020, but mother also had prior involvement with the Department in Virginia Beach and Henrico County. Housing and mental health services were offered to mother, but she declined everything except financial assistance.

An investigation revealed that mother had a history of homelessness. Mother self-reported that she lived in different homeless shelters in California while pregnant with the children. Mother also lived with various relatives or friends during that time. At some point after the children were born, the family moved to Texas. From Texas, mother brought the family to Virginia. All records that the Department accessed indicated that mother stayed in temporary housing or homeless shelters. Mother never stayed in any location for longer than a month but estimated that she had been in five different shelters. Mother had also spent the night in her vehicle with the children more than once.

Mother told a social worker that she provided her children with food, water, and shelter and did not think that her children had been removed lawfully. Mother stated that her Ford Explorer was like an RV so she could take the children around the country to stay in various parks; mother considered this arrangement to be acceptable. Mother sent the social worker photographs of the manner in which she had outfitted the vehicle to serve as accommodation. The vehicle contained a pack 'n play in the trunk with toys, a bed with blankets and toys in the back seat, and mother planned to shower or bathe at YMCAs across the country with a nationwide membership. Mother's vehicle did not contain car seats despite the children's young ages.

The Department presented evidence that mother often left the children unattended while at Madeline's House. When left unattended, the children got into trash and papers, and played with small toys. Shelter staff had removed small objects from the children's mouths, and the children were transported to the emergency room on one occasion after F.L.L. consumed feces

- 5 -

from a toilet brush. A shelter staff member also testified that she was holding the sleeping children when mother took them and pinched their noses until they gasped for air and woke up. Mother told the staff member that she did not want the children to nap so they would sleep through the night and mother could sleep that night. Mother was offered services through the shelter including parenting classes, counseling, and alternative housing; she declined all offers. Shelter staff ultimately asked mother to leave because she did not follow shelter rules.

The Department referred mother to Dr. Susan Reeves of Crossroads Community Services Board for a mental health evaluation. After the evaluation, Dr. Reeves diagnosed mother with major depressive disorder with mixed features, post-traumatic stress disorder, disruption of family by separation or divorce, and problems related to other legal circumstances. Dr. Reeves testified that mother clearly was depressed and anxious and had a significant history of reported trauma. Dr. Reeves also considered future diagnoses of bipolar disorder and narcissistic personality disorder, but while mother exhibited some behaviors associated with those disorders, she did not meet the full diagnostic criteria.

Dr. Reeves expressed concern over mother's ability to take care of her children because she was concerned that mother could not care for herself. At the time of the evaluation, Dr. Reeves indicated that it was more likely that something could happen to harm the children because of mother's circumstances. Mother testified and reported to Dr. Reeves that someone had followed her across the country. Dr. Reeves found that mother required support to parent and provide for her children in a successful manner, including the ability to provide a stable nonmobile household, a steady income, regular routine, and enhanced parenting skills. Dr. Reeves recommended supervised visitation with the children to help motivate mother to achieve those goals and thought that individual counseling would be necessary to help mother deal with her trauma. Dr. Reeves testified

that as of the day of the evaluation, mother could not parent the children without supervision, but if mother got the help that she needs, she could parent the children at some point in the future.

When presented with the foster care plan recommendations, mother did not think she needed to complete them and was averse to any suggestions. Mother refused housing assistance because it was not for the waterfront apartment in Hopewell that she requested. After the children were removed, mother first moved to Texas, and then went back to California. Mother had no plans to return to Virginia and lived in a shelter at the time of the circuit court hearing. When asked why she left Virginia, mother stated that she did not like the culture in Virginia and did not feel that the Department's actions were in her children's best interests.

Mother's argument to the contrary notwithstanding, the record supports the circuit court's findings that the children were abused and neglected because they faced an "imminent threat to life or health" if they remained in mother's custody. Code § 16.1-228(1). Mother left the children unsupervised on numerous occasions. The lack of supervision resulted in one child consuming feces off a toilet brush on one occasion. More generally, both children accessed trash, with all the hazards attendant to such circumstances. In addition, shelter staff at Madeline's House had to remove small objects from the children's mouths because of mother's inattentiveness. Mother repeatedly declined all offered services, including housing assistance, parenting classes, and counseling. Mother's mental health evaluation indicated that until mother's circumstances changed, she could not safely parent the children. Most importantly, mother left Virginia while the children remained in the Department's care rather than avail herself of services to regain custody of her children. Thus, the record supports, by a preponderance of the evidence, the trial court's conclusion that the children were abused or neglected.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>