COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Friedman and Chaney

JOSEPH MERLINO

MEMORANDUM OPINION[*] BY
v.      Record No. 1583-22-1                          JUDGE FRANK K. FRIEDMAN
                                                                    OCTOBER 3, 2023

CITY OF VIRGINIA BEACH

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

(Gregory K. Pugh, on brief), for appellant. Appellant submitting on
brief.

(Mark D. Stiles; Christopher Boynton; Christianna
Doughtery-Cunningham; Jennifer Peterson, Guardian ad litem for
the minor child; Office of the City Attorney; Petersen Law, PLC, on
brief), for appellee. Appellee and Guardian ad litem submitting on
brief.

Joseph Merlino (father) appeals the circuit court's adjudication and dispositional orders

finding that he had abused or neglected the child and transferring custody of the child to the

maternal grandparents; he also appeals a permanent protective order entered on behalf of the child.

On appeal, father argues that the circuit court erred in finding that the child was abused or neglected.

Father also challenges the circuit court's entry of the protective order as unnecessary and

overreaching. We find no error and affirm the decision of the circuit court.

BACKGROUND

On appeal, "we view the evidence in the light most favorable to the prevailing party, in this

case, the Department, and grant to it all reasonable inferences fairly deducible from the evidence."

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

*King v. King George Dep't of Soc. Servs.*, 69 Va. App. 206, 210 (2018) (quoting *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 420-21 (2012)).

Father and Ellie Tran (mother) are the biological parents to the child, who was seven years old at the time of the circuit court hearing. On February 14, 2017, mother arrived home to the residence she shared with the child and maternal grandparents. As she was walking into the residence, father stabbed mother with a syringe, injecting her with cyanide. The maternal grandmother was in the home with the child when she heard mother scream. The maternal grandmother saw father running from the scene and called 911. The child "witnessed . . . mother jumping up and down after being injected with [c]yanide, heard . . . mother's cries for help and witnessed . . . mother suffering from the agonizing and horrific effects of poisoning while waiting for the ambulance." Mother was transported to the hospital where she later died.

The Commonwealth charged father with first-degree murder. While awaiting trial, father sent encoded messages to a number of recipients, asking for help to create an alibi and to intimidate mother's family. Following the trial, the jury convicted father of first-degree murder, and the trial court sentenced father to life imprisonment.[1] Father appealed, and this Court denied father's petition for appeal. *See Merlino v. Commonwealth*, No. 1968-18-1 (Va. Ct. App. Sept. 25, 2019).

Following father's conviction, the Virginia Beach Department of Human Services (the Department) petitioned for a preliminary protective order against father based on abuse and neglect. The Virginia Beach Juvenile and Domestic Relations District Court (the JDR court) entered adjudicatory and dispositional orders finding that father had abused or neglected the child and transferring custody of the child to the maternal grandparents. The JDR court also entered a permanent protective order on behalf of the child. Father appealed the JDR court's orders.

---

[1] Father's sentencing order did not contain any prohibition from contacting the child.

The parties appeared before the circuit court on father's appeal. After considering the parties' evidence and argument, the circuit court found by a preponderance of the evidence that the maternal grandparents and the child were in the residence when father murdered mother. The circuit court found that the child witnessed father inject mother with cyanide, leading to mother's "agonizing death," and that throughout father's prosecution and incarceration, father "communicated with others outside of the jail setting . . . in a concerted attempt to communicate with and . . . attempt to intimidate the surviving members of the maternal family." Based on father's "somewhat extraordinary methods and mechanisms for communication," including sending coded messages, the circuit court held there was evidence of "at least minimal lengths that [father was] willing to try to go to in order to evade or subvert any surveillance or restrictions that correctional authorities or law enforcement might otherwise attempt to impose upon him." Based on this evidence, the circuit court found that there was a "reasonable prospect that if the opportunity [arose]" father would make "other attempts and efforts to subvert any type of surveillance or restriction on [his] contact with the child."

The circuit court acknowledged that father was serving a life sentence, followed by a three-year term of supervision, during which the probation officer could place restrictions on father's contact and communication with the child. The circuit court found, however, that the restrictions were not guaranteed and it was possible that the Commonwealth could release father early.

Following the hearing, the circuit court entered adjudicatory and dispositional orders finding that father had abused or neglected the child and transferred custody of the child to the maternal grandparents. The circuit court also entered a permanent protective order on behalf of the child. Father appeals.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

I.  Abuse and Neglect

Father first challenges the circuit court's finding of abuse and neglect. Father states that at the time of mother's death, the child resided with the maternal grandparents, and continues to do so, and that the child "is loved" and "is safe." Father contends that, as such, there is "no reason to determine that [the child] meets the definition of an abused or neglected child." Father also argues that "[m]ere incarceration of a parent does not render the child automatically abused or neglected."[2]

Code § 16.1-228(1) defines an abused or neglected child as any child "[w]hose parents . . . create[] or inflict[], threaten[] to create or inflict, or allow[] to be created or inflicted upon such child a physical or mental injury by other than accidental means, or create[] a substantial risk of death, disfigurement or impairment of bodily or mental functions." "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been

---

[2] Father also alleges for the first time on appeal that there is no evidence that father ever "physically abused or neglected the child." Rule 5A:18 bars our consideration of father's argument. Although there are exceptions to Rule 5A:18, father does not invoke them, and we will not do so sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

experienced by the child." *D. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 342, 364 (2012) (quoting *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1183 (1991)). "[T]he Code contemplates intervention . . . where 'the child would be subjected to an imminent threat to life or health to the extent that severe or irreversible injury would be likely to result if the child were returned to or left in the custody of his parent . . . .'" *Id.* (quoting *Jenkins*, 12 Va. App. at 1183). Proof by a preponderance of the evidence is the appropriate standard for abuse and neglect cases. *See Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 130 (2013).

Father does not dispute the circuit court's holding that the child was present when father murdered mother and the child witnessed mother's "agonizing death." Father also does not challenge the circuit court's conclusion that father's "numerous methods and mechanisms" of sending coded messages in order to avoid prosecution, obstruct witnesses, and subvert the Department of Corrections' restrictions was indicative of father's on-going threat to the child. Moreover, contrary to father's argument, the circuit court did not base its finding on father's incarceration, but rather on father's underlying violent and threatening actions. Neither the murder of the child's mother in front of the child, nor the subsequent efforts to harass and intimidate mother's family—the child's caregivers—suggest father values the child's well-being or safety. Based on the totality of the record, the circuit court did not err in finding that the child was abused or neglected.

## II. Protective Order

Father also challenges the circuit court's imposition of a protective order on behalf of the child. Father alleges that the protective order was unnecessary and overreaching because the maternal grandparents were not required to permit contact between father and the child. Father asserts that the Commonwealth could have, but did not, request a no-contact order between father and the child during the criminal trial; therefore, he claims that it is not necessary. Finally,

father asserts that because he is serving a life sentence, a protective order is unnecessary as the Department of Corrections has avenues to prohibit contact between father and the child.[3]

The record supports the circuit court's judgment that a protective order restricting father's contact with the child was appropriate to protect the child's welfare. Once a child is found to be abused or neglected, Code § 16.1-278.2 provides several options for a court "to protect the welfare of the child," including prohibiting or limiting contact "as the court deems appropriate between the child and his parent . . . whose presence tends to endanger the child's life, health or normal development." Code § 16.1-278.2(A)(3). "In matters of a child's welfare, [circuit] courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Thach v. Arlington Cnty. Dep't of Human Servs.*, 63 Va. App. 157, 168 (2014) (quoting *Logan*, 13 Va. App. at 128). "This Court presumes that the circuit court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Id.* (quoting *Logan*, 13 Va. App. at 128).

Here, father does not dispute the circuit court holding that father's past use of coded messages demonstrated his willingness to evade restrictions the correctional authorities may place on his communication with the child. Moreover, although father was serving a life sentence, father does not deny the possibility the Commonwealth could release father early and that any restrictions imposed upon his release were not guaranteed. Finally, father's reliance on the lack of a no-contact order from the criminal trial as evidence that a protective order is unnecessary is not persuasive, as the subject proceeding was properly before the circuit court in a

---

[3] Father also contends that the Department could have sought to terminate his parental rights under Code § 16.1-283(E). As the Department points out, however, Code § 16.1-283(E) applies to the "residual parental rights of a parent or parents of a child who is in the custody of a local board or licensed child-placing agency." This does not apply to the child, who has been in the maternal grandparents' custody since mother's death.

separate and distinct proceeding brought on behalf of the child. Considering the totality of the record, the circuit court did not err in imposing a protective order against father.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed.*