COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Annunziata

UNPUBLISHED

JENNIFER LYNN SPICER

v.      Record No. 2077-19-2

CUMBERLAND COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 22, 2020

FROM THE CIRCUIT COURT OF CUMBERLAND COUNTY
Leslie M. Osborn, Judge

(James R. Cooke, Jr., on brief), for appellant.

(E. M. Wright, Jr.; Matthew J. Friedman, Guardian *ad litem* for the
minor child, on brief), for appellee.


Jennifer Lynn Spicer (mother) appeals an order terminating her parental rights. Mother

argues that the circuit court erred by finding that the Cumberland County Department of Social

Services (the Department) made "reasonable and appropriate" efforts to "rehabilitate [her] to allow

her to be in a position to have custody of her child." Mother further contends that the circuit court

erred in terminating her parental rights because the Department "did not provide any services to

[her] and there was ample evidence at trial that she maintained contact with her child continuously

over the period of her incarceration." Lastly, mother asserts that the circuit court erred in

terminating her parental rights "effectively by virtue of her incarceration only, particularly

considering that she was scheduled to be released from incarceration within 90 days of the

termination of parental rights hearing." Upon reviewing the record and briefs of the parties, we

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother and Donnie Dickens (father) are the biological parents to the child who is the subject of this appeal.[2] When the child was fifteen months old, mother was incarcerated, and the child's paternal grandmother had custody of him for approximately one year.[3] The County of Henrico Juvenile and Domestic Relations District Court subsequently awarded sole legal custody and primary physical custody of the child to Brenda Campbell, the child's maternal grandmother (grandmother).

When the child was three years old, he climbed out of his bedroom window at grandmother's house and walked to a neighbor's house. Grandmother told the Department "that someone needed to come get [the child]." Grandmother reported that the child had crawled out the window the previous day and that she "could not keep doing this." Mother was incarcerated

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Father's parental rights were terminated, and he did not participate in the circuit court hearing.

[3] The child's maternal grandmother shared physical custody of the child with the child's paternal grandmother.

at the time. The Department removed the child from grandmother's home and placed him in foster care on June 8, 2017.

The Cumberland County Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order and preliminary removal order. The JDR court also adjudicated that the child was abused or neglected and entered a dispositional order on November 3, 2017.

The Department arranged for mother to have supervised monthly phone calls with the child. The Department described mother's interaction with the child on the phone as "always polite" and "always nice," but also "superficial." Mother mailed gifts and birthday cards to the child, and the Department provided her with photographs of the child.

The Department also provided visitation to grandmother, which progressed to a trial home placement with grandmother. After three months, the Department ended the trial home placement because grandmother had asked her estranged husband to drive her to a class and watch the child, even though she smelled alcohol on his person. The Department placed the child back in foster care and provided grandmother with weekly supervised phone calls and monthly supervised visits with the child. Upon receiving the reports from grandmother's psychological evaluation and her attachment assessment, the Department no longer recommended that the child be placed with grandmother.

On May 10, 2019, the JDR court terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed to the circuit court.

On October 15, 2019, the parties appeared before the circuit court. Since 2005, mother had been incarcerated or on probation for drug offenses, petit larceny convictions, and violating her probation. Mother testified that she was serving an active sentence of three years and six months, but expected to be released from prison on January 22, 2020. While she was

incarcerated, mother had participated in parenting classes, substance abuse classes, and classes for her GED. Mother acknowledged that she would "probably . . . need to go to some NA or some outpatient treatment" for substance abuse upon her release.

Mother admitted that she had not had custody of the child since he was fifteen months old, and at the time of the circuit court hearing, the child was five and half years old. Mother explained that once she was released from prison, she intended to either live with her boyfriend or at a halfway house and work at a restaurant where her friend was the manager. Mother did not have a definitive plan for child care, other than to use her income to pay for it. Mother supported grandmother having custody of the child until mother was in a position to care for the child herself.

Grandmother testified that a day or two after the child escaped from his bedroom window, she installed locks and alarms on the doors and windows of her house. Grandmother also explained that since the Department had removed the child, she had completed online classes in anxiety management, stress management, and parenting. Grandmother described her relationship with the child as "very close."

The Department, however, was concerned about placing the child with grandmother because of her "mental health and her emotional stability" and that she did not put the child's needs first. The Department also found that grandmother was "not cooperative" because she had revoked her releases for the Department to have access to her medical records. The Department had "eliminated" mother as a possible placement because she was incarcerated and had not been the child's caretaker "prior to him coming into care." The Department admitted that it had not visited mother or provided her with services while she was incarcerated.

The Department presented evidence that it had placed the child in several foster homes, but at the time of the circuit court hearing, he was "very happy and comfortable" in his latest

foster home. The foster mother testified that the child had "some anxiety issues." The Department referred the child to a play therapist, who helped him with coping skills and adjusting to the foster home.

After hearing all of the evidence and arguments, the circuit court found that grandmother was not a proper relative placement.[4] The circuit court found that it was in the best interests of the child to terminate mother's parental rights and entered an order terminating mother's parental rights under Code § 16.1-283(C)(1) and (2).

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court found that it was in the best interests of the child to terminate mother's parental rights under Code § 16.1-283(C)(1) and (2). Termination under Code § 16.1-283(C)(1) requires clear and convincing evidence that

> [t]he parent [has] . . . without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.

---

[4] Grandmother had filed a motion for custody, which the circuit court denied.

Whereas, termination under Code § 16.1-283(C)(2) requires clear and convincing evidence that

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Mother argues that the circuit court erred in terminating her parental rights.[5] She asserts that the circuit court erred in finding that the Department made reasonable and appropriate efforts to rehabilitate her because the Department had provided no services to her. She further contends that the circuit court should have considered that her expected release date from prison was within ninety days of the hearing.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)).

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Ferguson, 14 Va. App. at 340.

---

[5] The Department argues that mother did not preserve her assignments of error for appeal because she endorsed the final order as "Seen and objected to." We find that she preserved her arguments in her closing argument to the circuit court. See King v. King George Dep't of Soc. Servs., 69 Va. App. 206, 209 n.1 (2018) (finding that appellant preserved his arguments for appeal in his response to the motion for summary judgment and his closing argument).

Contrary to mother's arguments, the Department was not required to offer her services while she was incarcerated. See Harrison, 42 Va. App. at 163-64. This Court has held that "[i]t would be patently unreasonable to require the Department, under such circumstances, to continue to offer services." Id. "[A]s long as [s]he was incarcerated, the Department would have had no avenue available to offer [mother] services aimed at assisting [her] in regaining custody of the child." Id. at 164. Nevertheless, the Department arranged for mother to have monthly telephone contact with the child and provided her with photographs of the child.

The circuit court found that mother created the circumstances that led to her incarceration for most of the child's life. Mother had not had custody of the child since he was fifteen months old, and she did not have custody when the Department removed the child from grandmother's care.

At the time of the circuit court hearing, the child had been in foster care for more than two years. Mother was still incarcerated and expected to be released in January 2020. She acknowledged that upon her release, she would have to "rebuild a relationship" with the child and that it would "be a slow start." She testified that when she was released, she intended to live with her boyfriend or at a halfway house and hoped to work at a restaurant where her friend worked. She did not have a plan for child care, other than to use her income to pay it. Mother did not present evidence of any definitive plans for the child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the totality of the circumstances, the circuit court did not err in finding that the Department made reasonable and appropriate efforts and that it was in the best interests of the child to terminate mother's parental rights under Code § 16.1-283(C)(1) and (2).

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27. We remand the case to the circuit court to correct the typographical error of the child's name in the circuit court order terminating mother's parental rights. See Code § 8.01-428(B).

Affirmed and remanded.