COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Senior Judge Frank

RUKEYIA SILVER

                                                MEMORANDUM OPINION[*]

v.      Record No. 0830-20-1                                PER CURIAM
                                                FEBRUARY 23, 2021

NORFOLK DEPARTMENT OF HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

(Romy L. Radin, on brief), for appellant.

(Bernard Pishko, City Attorney; Heather L. Kelley, Deputy City
Attorney; B. Cullen Gibson, Guardian *ad litem* for K.C., a minor
child; Tanya L. Lomax, Guardian *ad litem* for E.B., a minor child, on
brief), for appellee.

Rukeyia Silver (mother) appeals the orders terminating her parental rights to her child,

E.B., approving the foster care goal of adoption for E.B., adjudicating that her child, K.C., was

abused or neglected, and approving the foster care plan for K.C. Mother argues that the circuit

court "erred in finding that there was sufficient evidence" to terminate her parental rights to E.B.

and that termination of her parental rights was not in E.B.'s best interests. She further contends

that the circuit court "erred in finding that there was sufficient evidence" to adjudicate that K.C.

was abused or neglected and that the Norfolk Department of Human Services (the Department)

"failed to exercise reasonable efforts to prevent removal of K.C." Upon reviewing the record

and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we

summarily affirm the decision of the circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

On appeal, "we view the evidence in the light most favorable to the prevailing party, in this case, the Department, and grant to it all reasonable inferences fairly deducible from the evidence." King v. King George Dep't of Soc. Servs., 69 Va. App. 206, 210 (2018) (quoting C. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 420-21 (2012)).

On February 1, 2016, the Department removed mother's two older children from her care after she was arrested and her placement option with a family friend "fell through."[2] The Department investigated the family and became concerned about the family's "chronic homelessness," mother's mental health, and the domestic violence between mother and her boyfriend, Shawnte Walker. Despite the evidence to the contrary, mother denied any history of domestic violence or mental health concerns.

The Norfolk Juvenile and Domestic Relations District Court (the JDR court) issued a child protective order prohibiting Walker from having contact with mother and the children, and it returned custody of the children to mother, over the Department's objection. The Department continued to provide services to mother, but she denied needing services.

Mother, however, participated in a psychological and parenting capacity evaluation with Dr. Cathy Tirrell, a clinical psychologist. Mother reported having a "very complicated medical history," including diagnoses of epilepsy, sickle cell anemia, traumatic brain injury, pulmonary

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother's two older children are not the subject of this appeal. At the beginning of the circuit court hearing, mother withdrew her appeals concerning the termination of her parental rights to her older children.

embolism, borderline diabetes, and Chiari malformation; Dr. Tirrell was unable to independently verify mother's assertions because no medical records were provided. Dr. Tirrell reported that mother did not believe that the Department needed to be involved in her and her family's lives, and mother was "irritable and frustrated" with the Department's case. Mother denied that Walker had been physically aggressive towards her, and she believed that a no-contact order was unnecessary. Mother did not accept any responsibility for the Department's involvement. Dr. Tirrell found mother to be "resourceful" and noted that mother tried "very hard so that the children's needs [were] met." Dr. Tirrell was concerned, however, that mother's stress impacted "her patience, her frustration, tolerance, [and] her ability to respond appropriately to her children's cues." Dr. Tirrell had "a lot of concerns about her being at home [with children] without support."

Mother and Walker were engaged in additional domestic violence incidents resulting in emergency protective orders and Walker's arrest. The children were placed back in foster care for a few months before they were returned to mother's care again for a trial home placement. In August 2017, the Department removed the children from mother's care for the last time after learning that mother continued to violate the child protective order and have contact with Walker.

After the Department placed the two older children in foster care, mother gave birth to E.B. in September 2017.[3] The Department removed E.B. from mother's care shortly after his birth due to concerns about her history of homelessness, her mental health and treatment, and "her ability to protect the children." The Department continued to provide services to mother and arranged for visitation. The Department, however, was unable to verify mother's attendance at individual counseling appointments and domestic violence classes.

---

[3] Walker is E.B.'s biological father.

For several weeks between December 2018 and January 2019, mother left the Norfolk area and reportedly traveled to Maryland and Delaware for brain surgery.[4] Despite requests from the Department, mother provided no medical documentation that she had brain surgery; instead, in January 2019, mother gave birth to K.C., unbeknownst to the Department.[5] Mother returned to Norfolk and left K.C. in the care of LaTonya Jackson, a former CASA worker for mother's two older children.[6] Mother never lived with Jackson, but K.C. lived with Jackson for approximately three months.

The Department became aware of the situation with K.C. in April 2019, after mother filed a petition requesting that legal and physical custody of K.C. be shared between her and Jackson. After learning of the pending custody petition and investigating the situation, the Department removed K.C. from Jackson's home due to its "lack of knowledge of [K.C.'s] birth, lack of cooperation, and [its] inability to vet out a suitable placement option." The Department determined that Jackson was not an appropriate placement because she was aware of mother's history with the Department and the services needed but did not inform the Department of K.C.'s birth and had allowed mother to visit the child.

On August 16, 2019, the JDR court entered a dispositional order after adjudicating that K.C. was abused or neglected.

---

[4] A hearing was scheduled for January 25, 2019, and the JDR court noted that "mother just had brain surgery."

[5] Walker is K.C.'s biological father.

[6] In September 2017, Jackson was terminated from the CASA program due to boundary issues and "overidentifying" with mother.

The JDR court also entered orders terminating mother's parental rights to E.B. and approving the foster care plans for E.B. and K.C.[7] Mother appealed the JDR court's orders to the circuit court.

On February 13 and 14, 2020, the parties appeared before the circuit court. The Department presented evidence that E.B. was doing well in foster care and had met his developmental milestones. K.C. also was doing well in foster care and was receiving occupational therapy.

Furthermore, the Department presented evidence that mother had not complied with its requirements. In December 2019, the Department had requested verification of mother's employment, but she never provided it. Mother also did not inform the Department of her current address, as she indicated that she was considering relocating. Mother and Walker continued to have contact with one another throughout the duration of the case, even though mother denied it. Their contact with one another oftentimes involved domestic violence. In September 2019, mother had reported that Walker had vandalized her van. Generally, however, mother was not "forthcoming" about any domestic violence incidents and denied their occurrences. The Department had not seen any change in mother's "ability to be protective of her children" since the Department first became involved with the family in 2016.

Mother testified about her efforts to complete the Department's requirements. She had participated in individual counseling "on and off for a year." She was employed periodically while the children were in foster care. At the time of the circuit court hearing, she was receiving disability, had registered with two temporary staffing agencies, and was enrolled in a business program with an online university.

---

[7] Walker voluntarily terminated his parental rights to E.B. and did not appeal the JDR court's rulings regarding K.C.

Mother acknowledged that she had "struggled" with housing and homelessness in the past. She had lived in two domestic violence shelters and at least three other residences. At the time of the circuit court hearing, she was renting a room in a house. Mother told the circuit court that since her current residence was not suitable, she was on a waiting list for housing and also was looking for housing and a job in North Carolina.

Mother testified that she had completed the required domestic violence classes and parenting classes. Mother acknowledged that her relationship with her older children's father involved domestic violence. When their relationship ended, mother "rekindle[d]" her relationship with Walker, which ultimately resulted in the births of E.B. and K.C. Mother explained that she had denied any abuse between her and Walker because she did not realize at the time that domestic violence involved more than physical abuse. She admitted at trial that their relationship had involved verbal, emotional, and mental abuse.

Mother claimed to have been in a car accident in Maryland in January 2019, and subsequently gave birth to K.C. She testified that she was unaware that she was pregnant. Shortly after giving birth, she said that she was transferred to a hospital in Delaware for brain surgery. Mother testified that as a result of the surgery, she had "significant memory loss." Mother stated that she lost her paperwork documenting the surgery and could not afford to have additional copies made. On cross-examination, mother disagreed with the Maryland medical records that indicated that she had been seen by a doctor when she was seven weeks pregnant with K.C., that she had been hospitalized for placenta previa bleeding from December 25, 2018 through January 5, 2019, and that she had a scheduled caesarian section. She could not explain why the Maryland medical records did not "mention anything" about a car accident.

Mother expressed her desire for E.B. and K.C. to return to her care. She claimed to be able to provide them with a "safe, stable environment."

- 6 -

After hearing the evidence and argument, the circuit court took the matter under advisement. On February 19, 2020, the circuit court entered orders terminating mother's parental rights to E.B. and approving the foster care goal of adoption for E.B. The circuit court also entered an adjudicatory order and a dispositional order for K.C., finding that K.C. was abused or neglected and approving the foster care plan. Mother timely noted her appeal.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

*Termination of parental rights*

Mother argues that the circuit court erred in finding that there was sufficient evidence to terminate her parental rights to E.B. and that termination was in his best interests. Mother emphasizes that she participated in domestic violence classes and learned that domestic violence encompasses more than physical abuse. She contends that she had separated from Walker and "want[ed] to protect her children and keep them safe." She also notes that she completed parenting classes and that her "health problems prevented her from completing services in a timely fashion."

The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months

> from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2). "[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 552 (2018) (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

When the Department initially became involved with mother and her children, there were concerns about domestic violence, homelessness, and mother's mental health. Mother was involved in an abusive relationship with her older children's father and entered into another abusive relationship with Walker. The Department presented evidence of assault and battery charges, violations of a protective order, and other violent encounters between mother and Walker, several of which occurred after mother's completion of her domestic violence class. Because of the ongoing domestic violence, the Department did not see any change in mother's "ability to be protective of her children."

Moreover, at the time of the circuit court hearing, mother still had not obtained safe and stable housing. She was renting a room in a house, which she acknowledged was not appropriate for E.B. She testified about being on a waiting list for housing and that if a house became available, she would need to present her birth certificate, which she did not have. She also had considered moving to North Carolina, but nothing was definitive.

With respect to her mental health, mother admittedly engaged in individual counseling "on and off for a year." She resumed counseling in November 2019 but only attended "about

three maybe four" sessions before she stopped going in December 2019. The Department was unable to verify mother's attendance.

E.B. was two years old at the time of the circuit court hearing and had been in foster care for most of his life. The Department had been involved with the family before E.B.'s birth and had offered numerous services to mother. Nevertheless, mother was not in a position to care for E.B. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the totality of the record, the circuit court did not err in terminating mother's parental rights to E.B. under Code § 16.1-283(C)(2) and finding that the termination was in E.B.'s best interests.

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cnty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Because we find that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2), we, therefore, do not need to reach the question of whether mother's parental rights should also have been terminated under Code § 16.1-283(B).

*Abuse & neglect*

Mother argues that the circuit court erred in finding that there was sufficient evidence to adjudicate that K.C. was abused or neglected. Mother contends that K.C. was in Jackson's care at

the time of the removal, and there was no evidence to prove that he was being abused or neglected while in her care.

Code § 16.1-228(2) defines an abused or neglected child as any child: "[w]hose parents or other person responsible for his care neglects or refuses to provide care necessary for his health." "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." D. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 342, 364 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1183 (1991)). Proof by a preponderance of the evidence is the appropriate standard for abuse and neglect cases. See Cumbo v. Dickenson Cnty. Dep't of Soc. Servs., 62 Va. App. 124, 130 (2013).

As discussed above, at the time of K.C.'s birth, the Department already had removed three of mother's children from her care due to her inability to provide a safe and stable home for them. Mother claimed that she was unaware that she was pregnant with K.C., but the Department introduced evidence suggesting that mother had a seven-week sonogram and prenatal care. Mother also was hospitalized for placenta previa bleeding from December 25, 2018 through January 5, 2019, and she had a caesarean section scheduled for K.C.'s birth. During the circuit court hearing, mother claimed that the medical records were incorrect, but she could not produce any records to corroborate her story that she had been in a car accident and gave birth to K.C. thereafter.

At the conclusion of the evidence, the circuit court stated, "There have been some things . . . along the way of this trial that . . . I think [mother] just hasn't been entirely truthful with us on everything." "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." Layman v. Layman, 62 Va. App. 134, 137 (2013) (quoting

<u>Street v. Street</u>, 25 Va. App. 380, 387 (1997) (*en banc*)). "This Court is bound by the credibility findings of the circuit court." <u>Tackett</u>, 62 Va. App. at 339.

Mother did not inform the Department about K.C.'s birth and subsequently left him in the care of Jackson. The Department found that Jackson was not a suitable placement for K.C. The executive director of Norfolk CASA opined that Jackson was incapable of "being in a protective capacity for any of [mother's] children" based on Jackson and mother's relationship.

Throughout the Department's involvement with mother, she had demonstrated that she was incapable of rendering appropriate parental care. The circuit court found that K.C. was abused or neglected because mother "neglect[ed] or refuse[d] to provide care necessary for his health." Code § 16.1-228(2). "When the trial court acts as a factfinder, as it did in this case, it retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" <u>C. Farrell</u>, 59 Va. App. at 421 (quoting <u>Farley v. Farley</u>, 9 Va. App. 326, 328 (1990)). Considering the totality of the evidence, the circuit court did not err in finding that K.C. was abused or neglected.

In addition, mother argues that the Department "failed to exercise reasonable efforts to prevent removal of K.C." because it could have pursued a protective order, instead of removing K.C. Mother, however, never raised this argument with the circuit court. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." <u>Tackett</u>, 62 Va. App. at 315 (quoting <u>Ohree v. Commonwealth</u>, 26 Va. App. 299, 308 (1998)); <u>see</u> Rule 5A:18.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>