COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Petty, Athey and Senior Judge Clements

ADNAN SAEED

              MEMORANDUM OPINION[*]
v.  Record No. 1292-20-2       PER CURIAM
                MAY 11, 2021
CITY OF FREDERICKSBURG DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

(Erin K. Dooley, on brief), for appellant. Appellant submitting on
brief.

(Robin N. Krueger; Patricia Joshi, Guardian *ad litem* for the minor
children, on brief), for appellee. Appellee and Guardian *ad litem*
submitting on brief.


Adnan Saeed (father) appeals the circuit court's orders finding that his three youngest

children were abused or neglected and terminating his parental rights to those children. Father

argues that the circuit court erred in finding that termination of his parental rights was in the best

interests of the children. Father also contends that the circuit court erred in finding that the City of

Fredericksburg Department of Social Services made "'reasonable and appropriate efforts' to help

the father remedy the conditions which led to the placement under Virginia Code section

16.1-283(C)." Upon reviewing the record and briefs of the parties, we conclude that the circuit

court did not err. Accordingly, we affirm the decision of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Father and Salwa Jaffar (mother) are the biological parents to five children; the parents' youngest two daughters and their youngest son are the subject of this appeal.[2] In 2002, father and mother, along with their oldest two children, moved from Iraq to the United States. Father's and mother's youngest three children were born in the United States.

In 2006, after receiving reports of physical neglect and physical abuse, the Fairfax County Child Protective Services "began to have significant contact" with the family and offered them "extensive services."[3] Father, however, did not participate in much of the services. The Fairfax County Department of Family Services remained involved with the family until 2013.

In March 2018, the family was living in Warren County, and the school counselor at the middle school contacted the parents because their youngest daughter, who was in eighth grade, was harming herself and had suicidal ideations. The school counselor recommended counseling

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother's and father's two older children are over the age of eighteen. At the time of the circuit court hearing, the parents' youngest three children were seventeen, fifteen, and twelve years old.

[3] The Fairfax County Child Protective Services was involved with father, mother, their children, father's ex-wife, and his children with his ex-wife.

for their daughter. Three weeks later, the school counselor discovered that the child was continuing to self-harm and was telling her friends that she wanted to kill herself. The school counselor followed up with the parents and learned that they "were still looking" for a therapist for their daughter.

In June 2018, the youngest daughter again expressed suicidal ideations, so the school counselor tried contacting mother and father. Because both parents were at work, the school counselor received permission from father to transport the child to the hospital for an evaluation. Several hours later, father arrived at the hospital by himself, and when he realized that the child could not leave yet, he left because he had "better things to do." Later that night, mother and father came to the hospital as the child was being transported to a different hospital under an emergency custody order. The child saw a therapist three times, but when the therapist suggested psychotropic medication, mother removed the child from therapy.

On May 3, 2019, the City of Fredericksburg Department of Social Services (the Department) received a report that the youngest daughter, who was fourteen years old at the time, had attempted to hang herself in the bathroom at school. Father did not believe that the child needed mental health treatment. Mother stated that the child's behavior was "only for attention" and that she did not have any mental health concerns. Mother reluctantly entered into a safety plan and agreed to refrain from abusing the children emotionally, verbally, and physically.

Later that evening, the Department confronted mother after learning that she already had broken the safety plan. Mother agreed to place the girls with someone who could care for the girls temporarily. Mother and father agreed to supervised visitation with the girls. The Department allowed the parents' youngest son to remain in the home, so long as mother agreed to refrain from "all forms of verbal, emotional, physical, and mental abuse."

A few days later, the youngest daughter was hospitalized again for suicidal ideations. Afterwards, mother and father entered into another safety plan and agreed to refrain from contacting their daughters and abusing their youngest son.

The Department subsequently learned that mother had been verbally abusing the children daily and physically abusing them "at least once a week or more." The children reported that mother threw items at them, pulled their hair, punched them, kicked them, and cursed at them. The Department observed bruises on the older daughter's arm. Father had witnessed the abuse, including the time when mother hit their daughters with a "turkey carving knife," yet he did not intervene.

On May 28, 2019, the Department received a report alleging that mother had sexually abused her youngest son, who was eleven years old at the time.[4] The Department met with the parents and informed them that the youngest son could not remain in the house with mother. Father and the youngest son agreed to leave the home. After a couple of weeks, father reported that he intended to return home to mother with the children because "it was causing problems for him." Father claimed that everything was "okay" at home and that the children were safe in the home.

Based on the family's extensive history with child protective services, the parents' failure to comply with the safety plans and services, and the parents' inability to comprehend how their actions affected the children, the Department removed the three children from their care and placed them in foster care on June 13, 2019. After the children's removal, father and mother resumed living together.

---

[4] The allegations of sexual abuse were unfounded.

The Fredericksburg Juvenile and Domestic Relations District Court (the JDR court) subsequently adjudicated that the three children were abused or neglected and entered dispositional orders. Mother and father appealed the dispositional orders.

Meanwhile, the Department referred mother and father to Family Solutions for a reunification assessment. On November 20, 2019, the evaluator at Family Solutions issued her report after investigating the situation and meeting with the parents. The evaluator opined that the prognosis for successful reunification was "[e]xtremely poor." The evaluator noted that "both parents adamantly denied any form of abuse or neglect" and "rated their parenting performance as superior." The evaluator, however, found that "mother's harsh and cruel treatment of all of the children reflect[ed] a pattern of pervasive physical and emotional abuse. The father's failure to protect [was] equally damaging." The evaluator noted that father "vacillated back and forth" because at times, he would indicate that mother's anger was a problem but then he would dismiss it. The evaluator emphasized that the youngest daughter had five inpatient psychiatric hospitalizations, yet the parents failed to understand the severity of the situation.

The Department retained Dr. Leigh Hagen, an expert in forensic psychology, to "offer some professional opinions and guidance" with the family. Dr. Hagen reviewed the record, met with the parents, and prepared a report. Dr. Hagen opined that there was "insufficient evidence of sustained and reliable improvement in parenting performance or family functioning since 2006." Dr. Hagen found that the various social services departments involved with the family had "made sufficient effort to rehabilitate the parents by any reasonable means to remedy the circumstances in place prior to the child's initial placement in foster care." He did not believe that "other reasonable services would produce an appreciable result in remedying the circumstances in place prior to the child's initial placement." Dr. Hagen found that father had

- 5 -

"not demonstrated either in words or actual conduct either an ability or willingness to stand up to protect these children in a way that [was] consistent and reliable." Dr. Hagen concluded that father and mother were "not in a position to safely parent any of these children."

The Department had ongoing concerns about the parents' ability to care for the children's mental health needs and protect them from further abuse or neglect. On January 27, 2020, the JDR court approved the foster care goal of adoption for the three children and terminated mother's and father's parental rights. Mother and father appealed to the circuit court.

On August 18, 2020, the parties appeared before the circuit court for a hearing on the consolidated appeals from the JDR court. The social worker testified that mother and father still had not developed any insight into the needs of the children. Mother and father repeatedly had told the social worker that the children did not need mental health treatment and that their daughters were just seeking attention. Furthermore, the social worker expressed concern that mother and father had not accepted their roles in the situation and their children's placement in foster care. Mother and father insisted that they were "excellent" parents.

The Department presented evidence that neither one of the girls wanted to visit mother and had not done so, but the girls had had "some visits" with father. The youngest son regularly visited father "via Zoom," but had no visits with mother. All three children were participating in therapy.

At the conclusion of the Department's evidence, father moved to strike, which the circuit court denied. Father did not present any evidence. Mother testified and denied abusing the children. The circuit court spoke with the parents' daughters, who were fifteen and seventeen years old, *in camera*.[5] The girls wanted to be adopted and did not object to the termination of their parents' parental rights.

---

[5] The youngest son was twelve years old and did not speak with the judge.

At the conclusion of all the evidence, father renewed his motion to strike, which the circuit court denied. The circuit court found that the children were abused or neglected and that it was in the children's best interests to terminate father's parental rights under Code § 16.1-283(C)(2).[6] This appeal followed.

ANALYSIS

Father appeals the circuit court's orders terminating his parental rights to his three youngest children. He contends that the evidence was insufficient to prove that termination was in the children's best interests and that the Department had made "reasonable and appropriate efforts" to help him remedy the conditions that led to the children's placement in foster care. Father admits that he did not preserve his arguments for appeal and asks this Court to consider them under the good cause and ends of justice exceptions.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" Friedman v. Smith, 68 Va. App. 529, 544 (2018) (quoting Andrews v. Commonwealth, 37 Va. App. 479, 493 (2002)).

"The Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." Perry v. Commonwealth, 58 Va. App. 655, 667 (2011) (quoting Luck v. Commonwealth, 32 Va. App.

---

[6] The circuit court also terminated mother's parental rights, and she appealed the circuit court's rulings. See Jaffar v. City of Fredericksburg Dep't of Soc. Servs., Record No. 1002-20-2.

827, 834 (2000)).  Here, father had an opportunity to note his specific objections to the circuit court's ruling, but he failed to do so.

Father also asked this Court to consider his arguments under the ends of justice exception, which "is narrow and is to be used sparingly[.]" Fletcher v. Commonwealth, 72 Va. App. 493, 510 (2020) (quoting Holt v. Commonwealth, 66 Va. App. 199, 209 (2016) (*en banc*)).  "In deciding whether the exception should apply, an appellate court must ask two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'"  Id. (quoting Gheorghiu v. Commonwealth, 280 Va. 678, 689 (2010)).  "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant."  Holt, 66 Va. App. at 210 (quoting Brittle v. Commonwealth, 54 Va. App. 505, 514 (2009)).

Father first argues that the circuit court erred in finding that the termination of his parental rights was in the children's best interests.  "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'"  Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated father's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if it finds that termination is in the best interests of the child and that:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months

from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

In matters involving the termination of parental rights, a court's "paramount consideration" is the child's best interests. King v. King George Dep't of Soc. Servs., 69 Va. App. 206, 211 (2018) (quoting Ridgeway, 59 Va. App. at 190). "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

At the time of the circuit court hearing, the family had been involved with social services for approximately fourteen years. Despite the intervention and services, the Department remained concerned about the children's safety and father's lack of intervention. The circuit court recognized that father loved his children, but the family had lived in a "long-standing toxic household that included violence and verbal, physical and emotional abuse." The circuit court heard evidence that father knew about the abuse but did not intervene. Father repeatedly told the Department and other professionals in the case that there were no problems at home and that he and mother were good parents.

Father emphasizes that all three children had expressed a desire to have some ongoing contact with him. The guardian *ad litem* acknowledged the children's feelings but also reported that they were "looking forward to being adopted." The circuit court had met *in camera* with the two older children involved and noted that "they very strongly told [the circuit court] that they want their parents' rights to be terminated and for them to be put up for adoption . . . ."

At the time of the circuit court hearing, father was not in a position to resume custody of the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Contrary to father's arguments, there was sufficient evidence to prove that termination of his parental rights was in the children's best interests.

Moreover, father argues that the circuit court erred in finding that the Department made reasonable and appropriate efforts, as required under Code § 16.1-283(C)(2). "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). The Department "is not required to force its services upon an unwilling or disinterested parent." Tackett, 62 Va. App. at 323 (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130.

The family had been involved with social services since 2006 and had received "extensive services" over the years. Once the Department became involved with the family, it attempted to provide services to the parents and referred father to the Rappahannock Area Community Services Board for counseling. Father stated that he "did not see any benefit in speaking with his therapist." The Department also referred father to the Village Fathers Program, which he attended a few times but he claimed not to have learned anything. Furthermore, the Department referred father and mother for a family reunification assessment. The evaluator opined that the prognosis for reunification was "[e]xtremely poor" and that

father's failure to protect was as "damaging" to the children as mother's abuse.  Dr. Hagen, an expert in forensic psychology, also opined that reunification efforts would be futile and found that the children would not be safe with father.  Contrary to father's arguments, the Department had made reasonable and appropriate efforts.

Based on a review of the record, we find that there is no error as argued by father, so the ends of justice exception does not apply.  See Fletcher, 72 Va. App. at 510.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.