COURT OF APPEALS OF VIRGINIA

**UNPUBLISHED**

Present: Chief Judge Decker, Judges Malveaux and Ortiz

VANESSA RENEE CAISON

MEMORANDUM OPINION*
v.      Record No. 0674-21-4      PER CURIAM
DECEMBER 14, 2021

CULPEPER COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

(Angela H. Williams; Bowman & Harper, PLC, on brief), for
appellant.

(Shelia Jane Weimer, Senior Assistant County Attorney; Christian A.
Brashear, Guardian *ad litem* for the minor child, on brief), for
appellee.


Vanessa Caison ("mother") appeals the Culpeper County Circuit Court order terminating

her parental rights to her minor child, D.G. Mother argues that the circuit court erred in finding that

(1) the Culpeper County Department of Social Services ("the Department") offered her reasonable

and appropriate services, (2) she was unwilling or unable to remedy the conditions leading to the

placement of the child in foster care, and (3) the termination was in the best interests of the child.

Upon reviewing the record and the parties' briefs, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the circuit court's decision. See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological parent to D.G., who is the subject of this appeal.[2] The Department first became involved with D.G. in 2017. The Department obtained a child protective order for D.G., which would extend until he reached the age of eighteen. In April 2019, mother had an altercation with a woman who was boarding at her home. On April 15, 2019, an anonymous caller notified the Department of the altercation. The caller stated that D.G., who was eight years old at the time, was reading at a pre-kindergarten level and that D.G.'s "teeth were bad because nobody takes him to the dentist." Additionally, the caller notified the Department that D.G. was living in a home with a hole in the ceiling, flooding, mold, mildew, and snakes that had intruded into the residence. The caller reported that D.G. slept on an air mattress on the floor. On April 16, 2019, the Department determined that mother had violated D.G.'s child protective order because of an incident involving aggressive behavior toward a boarder in the home. The Department removed D.G. from mother's care and placed him in foster care.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother has a total of four children. Two children, J.C. and D.C., were the subject of another appeal. See Caison v. Culpeper Cnty. Dep't of Soc. Servs., Record Nos. 1436-20-4 and 1437-20-4 (Va. Ct. App. Oct. 12, 2021). Mother has another daughter who is in the custody of that child's paternal grandmother.

On February 20, 2020, Dr. A. James Anderson performed a parental capacity evaluation on mother. Dr. Anderson diagnosed mother with alcohol and cocaine use disorders, in early remission; cannabis and hallucinogen use disorders, in sustained remission; major depression; narcissistic, avoidant, and paranoid traits; and provisional abuse or neglect of a child. Mother admitted to Dr. Anderson that she used marijuana every day from the age of thirteen until sometime in her twenties. She also admitted to smoking "two or three PCP-laced cigarettes sporadically and sometimes every other day" until November 2018. Dr. Anderson found that mother's responses to the parent awareness skills survey indicated that "[mother] shows spotty ability to handle a variety of hypothetical child-rearing situations in a manner consistent with child protection."

The Department and other agencies offered mother numerous services aimed at addressing her addiction, providing therapeutic support, and remedying the conditions in her home so that D.G. could return to her custody. These services included intensive therapeutic parenting, substance abuse evaluation and counseling, and random drug screens. In addition, the Department offered mother a parental capacity evaluation, meetings with a social services case manager, mental health case management, and supervised visitation with D.G. Mother also received services aimed at helping her financially, including Medicaid, food stamps, transportation aid, lifetime housing, and the payment of rent, electric, sewer, and water bills upon request. These services also came with written communications with clear due dates regarding the Department's recommendations.

While mother initially complied with the Department's recommended services, her later incarceration precluded her from participating in many of those services. Eventually, mother's progress diminished, and the Department determined that mother had failed to utilize the services offered. On January 12, 2021, the Culpeper County Juvenile and Domestic Relations District Court terminated mother's parental rights.

Mother appealed to the circuit court, which heard the case *de novo*. The Department presented evidence that D.G. has intellectual disabilities. When he entered foster care, D.G. "didn't show a lot of emotion" and "despised going to school." However, after receiving therapy, D.G. "progress[ed] beautifully." Soon, he was able to show emotion and recognize emotions in others. While in foster care, D.G. worked with math and reading specialists every day. At the time of the circuit court hearing, D.G. was reading at a mid-second-grade level and was reading for fun. He also showed an interest in music and dancing.

During the trial, the circuit court admitted an order terminating mother's rights to one of her children, J.C., and took judicial notice of that case file. At the time of the circuit court hearing, mother was awaiting sentencing for felonious assault on a law enforcement officer and violation of her probation, each of which carried a potential sentence of up to five years' incarceration. Additionally, mother had been convicted of one charge of possession of a Schedule I or II substance and was awaiting trial on a second such charge.

Mother testified about her employment history and her progress toward obtaining a G.E.D. She explained that she saw a psychiatrist for medication management. Mother also stated that while incarcerated, she took classes on "anger management, becoming a better parent, and . . . substance abuse." Mother discussed the difficulties she had in completing the services the Department offered, which included issues resulting from the COVID-19 pandemic, issues with transportation, and conflicts with her work schedule.

As of the final hearing date, D.G. had been in foster care for over two years, and the circuit court found that in that time D.G. "improved exponentially" and was "thriving." Given the unknown duration of mother's incarceration, the circuit court reasoned that D.G. "should not have to wait forever to learn when or if his parents are going to remedy the situations that have placed him in this position through no fau[l]t of his own." The circuit court accepted the testimony of the

Department's witnesses and found that mother had done little to change the circumstances that brought D.G. into the Department's custody. Finding it in D.G.'s best interests, the circuit court terminated mother's parental rights under Code § 16.1-283(C)(2) and Code § 16.1-283(E)(i). This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother challenges the circuit court's termination of her parental rights. Mother argues on appeal that there was not sufficient evidence to find that termination was in D.G.'s best interests. Mother argues that "[t]he Department offered no services to allow contact between [mother] and D.G. following her incarceration." "The Department then relied on the lack of relationship, a situation of their own making, for termination of [mother's] rights." The circuit court terminated mother's parental rights under both subsection (C)(2) and subsection (E)(i) of Code § 16.1-283.

A parent's parental rights may be terminated under Code § 16.1-283(E) "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated." There is no dispute in this case that mother's parental rights were terminated as to J.C. prior to the instant termination.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 319 (2013) (quoting Logan, 13 Va. App. at 128); see also King v. King George Dep't of Soc. Servs., 69 Va. App. 206, 211 (2018). "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Eaton v. Washington Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 331 (2016) (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

Contrary to mother's arguments, clear and convincing evidence supported the circuit court's finding that termination of mother's parental rights was in D.G.'s best interests. Since entering foster care, D.G.'s reading level improved from a pre-kindergarten level to a mid-second-grade level. When D.G. entered foster care, he was facing dangerous conditions at mother's home, including flooding, mold, mildew, and snakes. In addition, mother had an extensive history with substance abuse. The circuit court found that mother had failed to address these issues, despite services offered by the Department. In addition, at the time of the circuit court hearing, mother was incarcerated, had criminal charges pending, and was uncertain of when she would be released. Mother was not in a position to care for D.G. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). After entering the Department's custody, D.G. made significant educational and emotional advancements. In foster care, D.G. was removed from the hazards present in mother's home. The circuit court found that in his new foster-care environment D.G. "improved exponentially"

- 6 -

and was "thriving." He began showing emotion and developing interests in music, dancing, and reading. Considering the totality of the evidence, we find no error in the circuit court's ruling to terminate mother's parental rights under Code § 16.1-283(E)(i).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." Castillo, 68 Va. App. at 574 n.9; see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 and declining to reach termination of rights under another subsection). Because we hold that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(E)(i), we do not need to reach whether mother's parental rights also should have been terminated under subsection (C)(2).

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.