COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Causey and Friedman

HAYLEY CALLAGHAN

v.      Record No. 0372-22-1

CITY OF VIRGINIA BEACH
  DEPARTMENT OF HUMAN SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
DECEMBER 29, 2022

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Kevin M. Duffan, Judge

(Constance J. Vandervelde; Vandervelde PLC, on brief), for
appellant. Appellant submitting on brief.

(Mark D. Stiles, City Attorney; Christopher S. Boynton, Deputy City
Attorney; Brad C. Hudgins, Associate City Attorney; John C. Peeler,
Guardian *ad litem* for the minor child; Robin L. Tolerton, P.C., on
brief), for appellee. Appellee and Guardian *ad litem* submitting on
brief.

Hayley Callaghan (mother) appeals the circuit court's orders terminating her parental rights

and approving the foster care goal of adoption for her child, J.S. Mother argues that the circuit court

erred in terminating her parental rights because the evidence at trial was insufficient to find that

removal of J.S. was necessary at the onset, or alternatively, if the evidence was sufficient, the circuit

court erred in terminating her parental rights because she substantially remedied the conditions that

led to J.S.'s placement in foster care. Mother also argues that the circuit court erred in terminating

her parental rights because the evidence established that she substantially complied during the

Supreme Court of Virginia's ongoing orders declaring a judicial emergency. Upon reviewing the

record and briefs of the parties, we affirm the judgment of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

On appeal, "we view the evidence in the light most favorable to the prevailing party, in this case, the Department, and grant to it all reasonable inferences fairly deducible from the evidence." *King v. King George Dep't of Soc. Servs.*, 69 Va. App. 206, 210 (2018) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)).

In July 2019, the City of Virginia Beach Department of Human Services (the Department) became involved with mother and J.S. after J.S. tested positive for exposure to amphetamines at birth; he was also diagnosed with Down's Syndrome. Mother was not tested for substances at that time because she had received an epidural. J.S. was transferred to a newborn intensive care facility because he had breathing problems and needed urgent cardiac evaluation. Medical records indicated that J.S.'s physicians were concerned about fetal exposure to substances in utero. J.S. initially required high flow oxygen but eventually recovered and was able to breathe on his own. After his discharge from the hospital and because there were no family placement options, J.S. was placed in foster care.

Mother reported that she took "a piece" of an Adderall pill the day she went into labor because she felt tired. Mother did not have a prescription for this drug. Mother reported that she quit smoking during her pregnancy and was not compliant with taking a prenatal vitamin or iron supplement. Mother disclosed to the Department that she had prior convictions for drug possession with the intent to distribute and had taken substance abuse courses while incarcerated. Mother's

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

medical records indicated that she had two other children, but she did not have custody of either child.

In the Department's initial foster care plan, the goal was to return J.S. to mother, with a concurrent goal of relative placement. For J.S. to be returned to mother's care, the Department recommended that she undergo a parental capacity evaluation, intensive substance abuse counseling, and drug screening; the Department also required mother to participate in visitation with J.S. After the parental capacity evaluation, it was recommended that mother participate in outpatient therapy and substance abuse treatment, demonstrate six months of sobriety and get a sponsor from Narcotics Anonymous, take parent education classes, engage in visitation with J.S., and maintain or obtain stable housing and appropriate financial stability. In addition to the parenting course required by the Department, mother also did an online parenting course on her own.

Mother did not have stable housing. Initially, mother lived in a boarding house with several roommates. Mother later moved in with a friend in Chesapeake. Mother provided proof of her primary employment and reported working a second job as a home health aide. Mother also participated in supervised visitation with J.S. Once the COVID-19 pandemic began, those visits occurred over video chat, not in person.

While J.S. was in foster care, mother continued to test positive for methamphetamines and amphetamines from August 2019 through March 2021.[2] Mother enrolled in substance abuse treatment and was cooperative in the services, but repeatedly relapsed, testing positive for methamphetamines and amphetamines on four urine drug screens and three hair follicle tests. On October 16, 2020, the Department petitioned to terminate mother's parental rights.

---

[2] On mother's August 2019 hair follicle test, she only tested positive for methamphetamines; she was negative for amphetamines at that time.

Because of mother's positive drug screens, the Department moved to change the foster care goal to adoption. Despite mother engaging in services and continuing to communicate with the Department, J.S. had remained in foster care since his birth, approximately two years earlier. On May 3, 2021, the Virginia Beach Juvenile and Domestic Relations District Court (the JDR court) terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed the JDR court's rulings to the circuit court.

On November 16, 2021, the parties appeared before the circuit court. After hearing the evidence and argument, the circuit court terminated mother's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption. This appeal follows.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

I.  J.S.'s Removal

Mother first argues that the circuit court erred in approving the foster care goal of adoption and terminating her parental rights because the evidence was insufficient for a finding that removal of J.S. was necessary "at the onset" of the case. Mother, however, did not appeal the JDR court's dispositional order, which was a final order at the time of the circuit court hearing. *See* Rule 1:1(a). "[T]he General Assembly has determined that a 'dispositional order' entered by a J & DR court in

an abuse and neglect case constitutes a 'final order from which an appeal may be taken.'" *Blevins v. Prince William Cnty. Dep't of Soc. Servs.*, 61 Va. App. 94, 99 (2012) (quoting Code § 16.1-278.2(D)); *see also* Code § 16.1-296(A) ("[O]rders entered pursuant to § 16.1-278.2 are final orders from which an appeal may be taken."). As mother did not appeal this decision, we will not consider this argument.

## II. Termination of Parental Rights

Mother next argues that the trial court erred in terminating her parental rights because she substantially remedied the conditions that led to J.S.'s continuation in foster care. Mother points out that although she failed in maintaining sobriety, she substantially remedied the other requirements. Mother asserts that her parental rights were terminated because she did not fully remedy the conditions leading to J.S.'s placement in foster care.

Under Code § 16.1-283(C)(2), a court is authorized to terminate parental rights "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:"

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Accordingly, to grant the Department's petition to terminate parental rights under Code § 16.1-283(C)(2), the court was required to find by clear and convincing evidence that (1) "termination was in the best interests of [J.S.]"; (2) the "Department offered 'reasonable and appropriate' services to [mother] to help [her] substantially remedy the conditions which led to or required continuation of [J.S.'s] 'foster care placement'"; and (3) "despite those services, [mother] failed, 'without good cause,' to [timely] remedy those conditions." *Harrison v.*

*Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 161 (2004). Indeed, "[s]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). "Proof that the parent . . . , without good cause, [has] failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement . . . shall constitute prima facie evidence of this condition." Code § 16.1-283(C)(2).

After mother's parental capacity evaluation, the Department required her to be drug-free for six months. Throughout the Department's involvement, mother repeatedly relapsed, regularly testing positive for amphetamines and methamphetamines during her substance abuse treatment.

While the Court acknowledges mother's argument that she was compliant with every other service the Department required her to undergo, the record supports the circuit court's ruling that she did not substantially remedy the conditions that led to J.S.'s placement in foster care. J.S. was removed because of his exposure to amphetamines at birth and during the almost three years he was in foster care, mother continued to test positive for the same substances. Indeed, mother's inability to make substantial progress toward remaining sober for any period throughout the Department's involvement "constitute[s] prima facie evidence of [the] condition" that led to J.S.'s continuation in foster care. *Id.*

Additionally, although mother argues that the circuit court should have extended the deadlines imposed because the COVID-19 pandemic caused ongoing closures and struggles, her argument is without merit. Mother had over two years of participation in services to specifically address her substance abuse. No evidence in the record indicates that mother was unable to get

substance abuse services because of the COVID-19 pandemic closures. Indeed, the circuit court found that the Department had made reasonable efforts to achieve reunification with mother.

At the time of the hearing, J.S. had been in foster care for his entire life, over two years. During that time, mother repeatedly tested positive for amphetamines and methamphetamines and could not maintain sobriety for the period that the Department requested. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).[3] Considering the totality of the circumstances, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed*.

---

[3] Again, the Department's initial goal was to return J.S. to mother, with a concurrent goal of relative placement. These goals could not, however, be attained and the child is now well over three years old.